Darrell JACKSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

2014–SC–000612–MR

Supreme Court of Kentucky.

RENDERED: FEBRUARY 18, 2016

Counsel for Appellant: Daniel T. Goyette, Louisville Metro Public Defender of Counsel, Office of the Louisville Metro Public Defender, Cicely Jaracz Lambert, Assistant Appellate Defender, Office of the Louisville Metro Public Defender.

Counsel for Appellee: Andy Beshear, Attorney General of Kentucky, Office of the Attorney General, Dorislee J. Gilbert, Special Assistant Attorney General.

## OPINION OF THE COURT BY JUSTICE VENTERS

Appellant, Darrell Jackson, was tried in the Jefferson Circuit Court for the murder of Michael Chester. The jury acquitted him on the murder charge but convicted him of first-degree manslaughter; a sentence of twenty years' imprisonment was imposed. On appeal as a matter of right, Jackson presents three arguments for reversal of his conviction. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this appeal are not contested. Appellant on several occasions sold heroin to Michael Chester and his wife, Ashley. Based upon their ongoing commercial relationship, Appellant agreed to "front" heroin to Chester, meaning that he would supply Chester with a quantity of heroin and then collect the cash payment at a later time.

When notified that Chester was ready to pay, Appellant went to Chester's apartment to collect payment for a recently delivered quantity of heroin. After Chester tendered only partial payment on his ac-

count, an argument began and a physical altercation ensued. From an adjoining room, Ashley heard Appellant and Chester quarrelling about money. She heard scuffling sounds she described as "wrestling around" and "smacking." When she heard a gunshot, she ran into the room and saw Chester lying on the floor with Appellant standing over him, his right hand in his coat pocket. She also saw a box cutter tool that Chester carried to work lying on the floor nearby. Appellant fled immediately but was arrested a short time later.

Appellant testified that when he rejected Chester's partial payment and demanded payment in full, Chester grabbed him, shoved him to the floor, and then came at him with what Appellant believed to be a pocket knife. Appellant testified that in order to protect himself, he reached for the gun in his coat pocket and intentionally shot Chester. Appellant said that he then panicked and left the scene.

Although the trial court instructed the jury upon the theory of self-defense, it declined Appellant's request for an additional instruction on the "no duty to retreat" qualification of self-defense codified in KRS 503.055(3). The jury rejected Appellant's self-defense claim and found him guilty of first-degree manslaughter. The jury recommended the maximum sentence of twenty years' imprisonment and judgment was entered accordingly.

Appellant raises three issues on appeal: 1) that the trial court erred by failing to give the "no duty to retreat" instruction; 2) that the trial court erred during the

penalty phase of the trial by permitting the Commonwealth to present evidence of Appellant's juvenile court adjudication for robbery; and 3) that although KRS 532.055(2)(a)6 authorized the admission of his juvenile court record, the trial court erred by doing so because the statute is an unconstitutional encroachment upon the prerogatives of the judiciary. He now asserts that this Court's well-established tolerance of the statute under principles of comity should be withdrawn. For the reasons stated below, we affirm the judgment of the Jefferson Circuit Court.

## II. ANALYSIS

### A. Appellant was not entitled to a "no duty to retreat" jury instruction.

Relying upon KRS 503.055(3)[1] and this Court's decision in *Commonwealth v. Hasch,* 421 S.W.3d 349 (Ky.2013), Appellant requested the trial court to instruct the jury upon the "no duty to retreat" doctrine. The jury instruction approved in *Hasch* provides:

You are further instructed that if [the defendant] was not engaged in unlawful activity and was in a place where she had a right to be, then she had no duty to retreat from [the "victim"] and had the right to stand her ground and meet force with force, including deadly physical force if she reasonably believed it was necessary to prevent death or serious bodily harm to herself.

*Id.* at 355. Our express approval of this instruction is stated in *Hasch. Id.* at 364.[2]

1. KRS 503.055(3) provides: "A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent

the commission of a felony involving the use of force."

2. Appellant's tendered instruction differed materially from KRS 503.055(3) and the instruction approved in *Hasch* because it failed to include the necessary precondition "if the defendant was not engaged in unlawful activity;" hence, it was deficient. We do not decide

The trial court rejected the proffered instruction, reasoning that it was not warranted in this case because Appellant was not "in a place he ha[d] the right to be" at the time of the shooting. We do not adopt the rationale employed by the trial court but we agree with its conclusion that the evidence did not justify the proposed instruction. Accordingly, we affirm the trial court's decision on slightly different grounds.

As stated in KRS 503.055(3), the "right to stand [one's] ground and meet force with force" is available only to one "who is not engaged in an unlawful activity" at the time. Because the undisputed evidence established that Appellant was not engaged in lawful activity, he was not entitled to the "no duty to retreat" instruction.

 Generally, a trial court is obligated to "instruct the jury upon every theory reasonably supported by the evidence. 'Each party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it.'" *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky.2015) (citation omitted). Claims that a trial court erred by failing to give a requested instruction are reviewed on appeal for abuse of discretion.[3] *Id.* This deference to the trial court's discretion arises from our recognition that the trial court has a "superior view" of the evidence and is better situated to assess its nuances. *Id.* "[I]n evaluating the [trial court's] refusal to give an instruction we must ask ourselves, construing the evidence favorably to the pro-

ponent of the instruction, whether the evidence would permit a reasonable juror to make the finding the instruction authorizes." *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky.2013).

In this case, our use of these standards of review is simplified because the pertinent facts are not in dispute. Appellant acknowledges that at the time of the shooting, he was in Chester's apartment at Chester's invitation to collect Chester's payment of money for a previously fronted quantity of heroin. Appellant contends that as an invitee he had a right to be on the premises and that his activity on the premises—collecting money owed to him—was not an "unlawful activity." Therefore, he argues, the "no duty to retreat" instruction was required under *Hasch.* While there is no factual dispute about *what* Appellant was doing, there is disagreement about whether his activity was lawful. That question is purely an issue of law. We conclude that while Appellant may have had Chester's permission to be on the premises, his activity at the time of the shooting was illegal.

Appellant was selling heroin to Chester and it cannot be doubted that selling heroin is an unlawful activity. KRS 218A.1412.[4] To "sell" heroin means "to dispose of [heroin] to another person for consideration or in furtherance of commercial distribution." KRS 218A.010(42). Appellant argues that his unlawful activity of selling heroin was completed when the heroin was delivered to Chester and that

---

the case on that basis. We focus on the larger issue of whether any properly-worded "no duty to retreat" instruction should have been given.

**3.** An abuse of discretion occurs when the trial court's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

**4.** KRS 218A. 1412(b) criminalizes "trafficking" in heroin. As defined by KRS 218A.010(49), to "traffic" means to "manufacture, distribute, dispense, **sell**, transfer, or possess with intent to manufacture, distribute, dispense, or sell[.]" (Emphasis added.)

the residual act of receiving the consideration (i.e., collecting the purchase price) could not be part of the crime. Therefore, he contends, his collection activity was not unlawful. By disassociating the act of delivering the heroin from the act of collecting the payment, Appellant seeks to legitimize the activity of receiving payment for his illegal drug sale.

As provided by the definition of "sell" set forth in KRS 218A.010(42), selling a controlled substance encompasses both aspects of the transaction—the delivery of the drug and the receipt of the consideration for it. Although transferring possession of the illegal drug with the expectation of receiving future payment is enough to constitute the crime of selling heroin, the criminality of the activity is not necessarily concluded by the unlawful delivery. Finishing the transaction by collecting the money is as much a part of the illegal sale as is the delivery of the heroin.

■ Although we have not heretofore stated directly that collecting the money for a previously-delivered quantity of an illegal drug is itself an illegal activity, we have come very close. In *Mangrum v. Commonwealth* we determined that collecting the payment for marijuana in advance of its delivery by a different person at later time was an unlawful action. 674

S.W.2d 957, 958 (Ky.1984). Based upon the same definition of "sell" cited above, the defendant in *Mangrum* was convicted as an accomplice to the illegal sale of marijuana, even though the physical transfer of the marijuana had not occurred. Obviously, Appellant could not be an accomplice to his own criminal activity, but if an accomplice's role of collecting money for someone else is an unlawful activity associated with the selling of illegal drugs, then so, too, is the principal's activity in collecting on his own behalf.[5]

Here, the evidence irrefutably established that Appellant was engaged in an unlawful activity at the time of his altercation with Chester. He was concluding an illegal drug deal. *Hasch* holds that a trial court is bound to provide a "no duty to retreat" instruction only "when presented with circumstances in which the provisions of [KRS 503.055] are applicable, and upon the request of one of the parties[.]" 421 S.W.3d at 364. Those provisions are not applicable when the uncontested evidence clearly establishes that the defendant was engaged in an unlawful activity. Because he was engaged in an unlawful activity, Appellant was not entitled to the "no duty to retreat" instruction. The trial court did not abuse its discretion when it rejected his requested instruction.[6]

---

**5.** It should also be noted that Appellant had no legal right to receive *any* money from Chester because money paid for the purchase of illegal drugs does not belong to the drug dealer. We noted in *Howell v. Commonwealth* that the argument that the recovered proceeds from an illegal drug sale should be applied to the defendant's legal expenses was "premised upon the flawed assumption that illegal drug proceeds are a defendant's property. To the contrary, title to all property forfeited under KRS 218A.410 vests in the Commonwealth at the time of the illegal act." 163 S.W.3d 442, 449–50 (Ky. 2005). Moreover, where any part of the consideration for a contract is illegal, the entire contract is void. *Fears v. United Loan & Deposit Bank,*

172 Ky. 255, 189 S.W. 226 (Ky.1916). The entire contract underlying Appellant's asserted right to collect "his" money was void; he had no legal or contractual right to collect the payment for the fronted drugs in the first place.

**6.** Given our conclusion on this point, we need not address the issue of whether Appellant was at the time of the shooting "in a place he had the right to be." We also need not address the Commonwealth's argument that Appellant's tendered instruction was properly rejected because it did not accurately state the law. See n.2.

## B. Evidence of Appellant's prior juvenile adjudication was properly admitted in the penalty phase of the trial.

 During the penalty phase of Appellant's trial, a paralegal employed by the Commonwealth's Attorney, reading from a summary of Appellant's juvenile court record, testified that shortly before his eighteenth birthday, Appellant pled guilty in juvenile court to a robbery charge. KRS 532.055(2)(a)6 provides that "juvenile court records of adjudications of guilt of a child for an offense that would be a felony if committed by an adult" shall be admissible in the penalty phase of a criminal trial. Appellant voiced no objection to this testimony so his claim of error is unpreserved. To obtain relief under RCr 10.26, Appellant must demonstrate that his substantial rights were affected by an error at trial that was manifest, fundamental and unambiguous so as to threaten the integrity of the judicial process itself. *Baumia v. Commonwealth*, 402 S.W.3d 530, 542 (Ky. 2013) (citation omitted).

Appellant complains specifically that instead of having a witness read from a summary of Appellant's juvenile record, the Commonwealth should have introduced the actual juvenile court records of Appellant's adjudication, authenticated pursuant to KRE 901(b)(1) or KRE 902. Appellant has made no showing that the substance of the paralegal's testimony differed in any respect from the official record of the juvenile court adjudication, and so we see no possibility that Appellant was unduly prejudiced by the paralegal's testimony in lieu of the actual records.

Appellant also claims that the paralegal's testimony created the improper impression that an "adjudication" in juvenile court is synonymous with a "conviction,"

and that the jury's decision was affected by that incorrect impression. Upon review of the record, we find no merit in that assertion. We see no likelihood that the jury was misled to the prejudice of Appellant. Accordingly, we conclude that no palpable error occurred.

## C. The comity previously accorded by this Court to KRS 532.055(2)(a)6 remains unchanged.

 Appellant's final argument is that KRS 532.055(2)(a)6 is unconstitutional because it violates the separation of powers doctrine established within Sections 27 and 28 of the Kentucky Constitution. Although this issue was not raised at trial, Appellant asserts that the lack of preservation should not inhibit appellate review. He notes that if the issue had been raised in the traditional manner, the trial court would have been bound by the established precedent of this Court to deny his requested relief. While we cannot condone Appellant's failure to raise the issue in the trial court, we agree that the trial court was not authorized to overturn or disregard the controlling authority that bars the relief Appellant sought. His failure to ask the trial court for relief it could not properly provide should not impair his right to raise the issue here.

In *Commonwealth v. Reneer*, 734 S.W.2d 794, 796 (Ky.1987), we held that KRS 532.055 was "a legislative attempt to invade the rule making prerogative of the Supreme Court by legislatively prescribing rules of practice and procedure [and therefore] it violate[d] the separation of powers doctrine enunciated in Section 28 of the Kentucky Constitution." Nevertheless, we declined to hold KRS 532.055 unconstitutional, and "we accept[ed] its provisions *for the time being* under the principle of comi-

ty." *Id.* at 798 (emphasis added). With a limited exception not germane to this appeal,[7] in *Manns v. Commonwealth,* 80 S.W.3d 439, 444 (Ky.2002), we extended our grant of comity to KRS 532.055(2)(a)6.

Appellant correctly asserts that because the Kentucky Supreme Court clearly accorded comity (at least "for the time being") to KRS 532.055(2)(a)6, only the Kentucky Supreme Court is authorized to determine if or when comity should no longer apply. In *Reneer,* we expressly noted the Court retained the "power to preempt [KRS 532.055] by the promulgation of different rules of procedure at any time we determine it necessary" reserving "the right to consider any abuses or injustices alleged to be caused by KRS 532.055." 734 S.W.2d at 798.

Upon review, we do not see in Appellant's case any abuse or injustice to compel us to reconsider the comity previously granted and, therefore, we decline to do so. KRS 532.055(2)(a)6 expressly provides that the admission of juvenile court records remains subject to the Kentucky Rules of Evidence. It therefore remains, like any other admissible evidence, subject to exclusion when, in the exercise of its sound discretion under KRE 403, the trial court determines that exclusion is needed to avoid injustice. Appellant was not unfairly prejudiced by the references during the sentencing phase of the case to his juvenile court adjudication. We decline to withdraw the comity we have previously accorded to the provisions of KRS 532.055.

7. To the extent that KRS 532.055(2)(a)6 purports to permit the use of a prior juvenile adjudication for impeachment purposes, we concluded in *Manns* that it violated Section 28 of the Kentucky Constitution and KRE 1102(b) as a "unilateral amendment of KRE 609" by the General Assembly, and thus would not be accorded comity by the judiciary. *Manns v. Commonwealth,* 80 S.W.3d 439, 446 (Ky.2002).

## III. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur.