LAMBERT, D., JUDGE:
Darrell Jackson appeals from the Jefferson Circuit Court's order entered January *618 20, 2017, denying his motion to vacate sentence pursuant to RCr[2] 11.42. Having concluded the trial court properly denied Jackson's motion as to his ineffective assistance of appellate counsel (IAAC) claim regarding the failure to raise prosecutorial misconduct, we affirm in part. However, we also conclude Jackson is entitled to an evidentiary hearing, and to have factual findings and legal conclusions entered in the record, on his IAAC juror misconduct claim. Therefore, we also vacate in part and remand for an evidentiary hearing and further proceedings on juror misconduct.
A jury convicted Jackson of first-degree manslaughter and the trial court imposed the sentence of twenty years' imprisonment. We adopt the facts as set forth by the Supreme Court of Kentucky on Jackson's direct appeal:
The facts relevant to this appeal are not contested. Appellant on several occasions sold heroin to Michael Chester and his wife, Ashley. Based upon their ongoing commercial relationship, Appellant agreed to "front" heroin to Chester, meaning that he would supply Chester with a quantity of heroin and then collect the cash payment at a later time.
When notified that Chester was ready to pay, Appellant went to Chester's apartment to collect payment for a recently delivered quantity of heroin. After Chester tendered only partial payment on his account, an argument began and a physical altercation ensued. From an adjoining room, Ashley heard Appellant and Chester quarrelling about money. She heard scuffling sounds she described as "wrestling around" and "smacking." When she heard a gunshot, she ran into the room and saw Chester lying on the floor with Appellant standing over him, his right hand in his coat pocket. She also saw a box cutter tool that Chester carried to work lying on the floor nearby. Appellant fled immediately but was arrested a short time later.
Appellant testified that when he rejected Chester's partial payment and demanded payment in full, Chester grabbed him, shoved him to the floor, and then came at him with what Appellant believed to be a pocket knife. Appellant testified that in order to protect himself, he reached for the gun in his coat pocket and intentionally shot Chester. Appellant said that he then panicked and left the scene.
Although the trial court instructed the jury upon the theory of self-defense, it declined Appellant's request for an additional instruction on the "no duty to retreat" qualification of self-defense codified in KRS[3] 503.055(3). The jury rejected Appellant's self-defense claim and found him guilty of first-degree manslaughter. The jury recommended the maximum sentence of twenty years' imprisonment and judgment was entered accordingly.
Jackson v. Commonwealth , 481 S.W.3d 794, 795-96 (Ky. 2016) (footnote added).
The Supreme Court of Kentucky affirmed Jackson's conviction on direct appeal. Id. at 796. The issues Jackson raised in his unsuccessful appeal included:
1) that the trial court erred by failing to give the "no duty to retreat" instruction;
2) that the trial court erred during the penalty phase of the trial by permitting the Commonwealth to present evidence of Appellant's juvenile court adjudication for robbery; and *619 3) that although KRS 532.055(2)(a) 6 authorized the admission of his juvenile court record, the trial court erred by doing so because the statute is an unconstitutional encroachment upon the prerogatives of the judiciary.
Id.
Following his direct appeal, Jackson moved, pro se , for relief under RCr 11.42, asking the trial court to vacate its judgment and conviction on the basis of ineffective assistance of both trial counsel and appellate counsel. In related motions, Jackson also requested an evidentiary hearing, appointment of counsel, and leave to proceed in forma pauperis. The trial court denied Jackson's motions in an order entered on January 20, 2017. This appeal followed.
In his pro se motion, Jackson raised several allegations of ineffective assistance of both trial counsel and appellate counsel. The supplemental brief filed by counsel on Jackson's behalf focused on two issues of ineffective appellate counsel. We confine our review to these two claims. Jackson alleges appellate counsel did not argue: 1) trial counsel's failure to object to the prosecution's flagrant closing argument violations; and 2) juror misconduct. Jackson contends the trial court should have granted an evidentiary hearing on both issues.
When determining whether an evidentiary hearing is warranted under an RCr 11.42 motion, a trial court must consider "whether the allegations ... can be resolved on the face of the record," or if "there is a material issue of fact that cannot be conclusively resolved, i.e. , conclusively proved or disproved, by an examination of the record. The trial judge may not simply disbelieve factual allegations in the absence of evidence in the record refuting them." Fraser v. Commonwealth , 59 S.W.3d 448, 452-53 (Ky. 2001) (citations omitted). The standard under Fraser provides the trial court is not free to simply disbelieve the facts as alleged and must, instead, take the allegations in a post-conviction petition as true, unless they are conclusively refuted by the record. Id. When the allegations are not clearly refuted by the record, the movant is entitled to an opportunity to create a record through an evidentiary hearing with the assistance of counsel - appointed, if needed. See Fraser , 59 S.W.3d at 453. If the trial court denied an evidentiary hearing, then our review is restricted to "whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." Lewis v. Commonwealth , 411 S.W.2d 321, 322 (Ky. 1967).
A movant will only be successful on IAAC claims for "ignored issues" which "counsel must have omitted completely" from the direct appeal. Hollon v. Commonwealth , 334 S.W.3d 431, 437 (Ky. 2010). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance be overcome." Id. at 436-37 (internal quotation marks and citation omitted). IAAC claims will not succeed if based on merely inartful arguments or missed case citations. Id. "Finally, the defendant must also establish that he or she was prejudiced by the deficient performance, which, as noted, requires a showing that absent counsel's deficient performance there is a reasonable probability that the appeal would have succeeded." Id. at 437 (citation omitted).
Appellate review concerning IAAC under an RCr 11.42 motion employs an abuse of discretion standard. Bowling v. Commonwealth , 981 S.W.2d 545 (Ky. 1998). In determining whether a trial court's actions amount to an abuse of discretion, we must consider whether the decision *620 reflected arbitrariness, unreasonableness, unfairness or a lack of support from sound legal principles. Commonwealth v. English , 993 S.W.2d 941 (Ky. 1999).
First, we address Jackson's allegation of appellate counsel's deficiency for having failed to raise the issue of prosecutorial misconduct in his direct appeal. This is not one of the arguments brought in Jackson's direct appeal; therefore, as an omitted argument, the first prong of IAAC, deficiency, has been met. Hollon , 334 S.W.3d at 437. The next step is to decide whether this argument would have succeeded had Jackson's appellate counsel raised it in his direct appeal. Id. An IAAC argument will not succeed when appellate counsel did not make futile or meritless arguments. Williams v. Commonwealth , 336 S.W.3d 42, 47 (Ky. 2011).
To succeed, allegations of prosecutorial misconduct during closing arguments must either be flagrant or must meet the three conditions set out in Barnes v. Commonwealth , 91 S.W.3d 564, 568 (Ky. 2002). The three Barnes conditions include: 1) proof of the defendant's guilt is not overwhelming, 2) defense counsel objected, and 3) the trial court did not cure the error with a sufficient admonition to the jury. Id. Here, the evidence against Jackson is overwhelming due to: his own admission of being at the scene and shooting the victim, although he maintains it was in self-defense; and the supporting proof, including eye-witness and DNA evidence tying him to the scene when the victim died. Jackson's trial counsel did not object on the record to any statements made by the Commonwealth, which he now alleges indicate prosecutorial misconduct. Accordingly, Jackson must prove the closing argument misconduct reached the level of flagrance because he is unable to meet the conditions under Barnes .
A four-factor test is used to determine when a prosecutor's comments constitute flagrant misconduct requiring a reversal. Dickerson v. Commonwealth , 485 S.W.3d 310, 329 (Ky. 2016). "[W]hether any of the alleged prosecutorial misconduct here requires reversal turns solely on whether it was 'flagrant' so as to have rendered the trial fundamentally unfair." Id. (quoting Duncan v. Commonwealth , 322 S.W.3d 81, 87 (Ky. 2010). The four factors include: "1) whether the remarks tended to mislead the jury or to prejudice the accused; 2) whether they were isolated or extensive; 3) whether they were deliberately or accidentally placed before the jury; and 4) the strength of the evidence against the accused." Id. (citing Mayo v. Commonwealth , 322 S.W.3d 41, 56 (Ky. 2010) ). Finally, we must consider the "fairness of the trial as a whole, with reversal being justified only if the prosecutor's misconduct was so improper, prejudicial, and egregious as to have undermined the overall fairness of the proceedings." Id. (internal quotation marks and citations omitted).
Jackson contends the Commonwealth committed prosecutorial misconduct during closing argument. In particular, he maintains the Commonwealth's quotation from the O.J. Simpson trial: "If the glove doesn't fit, you must acquit!" was improper and inflamed the jury.[4] The comment was a brief reference to the O.J. Simpson trial, including the quotation. The prosecutor did *621 not emphasize, repeat, or elaborate on his analogy. Therefore, it was neither extensive nor deliberate misconduct, and the only question remaining is whether it misled the jury or prejudiced Jackson. Because the meaning of the quotation is obscure and its use was isolated, it is unlikely the jury would have been misled in the prosecution's favor or the popular culture reference would have prejudiced the jury against Jackson. Similar to the Barnes conditions as discussed above, the evidence against Jackson is strong and weighs against him here. Because most of the conditions weigh against Jackson, the alleged misconduct does not meet the flagrancy standard.
Jackson also alleges several other instances of prosecutorial misconduct when the Commonwealth misstated the evidence, denounced Jackson's testimony as a lie, commented on Jackson's interview with the police detective, and described Jackson as having "stood over the [victim's] body like a hunter over his prey." None of these incidents can overcome the flagrancy test factors. First, these additional instances do not appear to have misled the jury and were not adequately prejudicial. It is well established during closing argument, the prosecutor may comment on tactics, evidence, and witness veracity and credibility. Dickerson , 485 S.W.3d at 332 (citing Slaughter v. Commonwealth , 744 S.W.2d 407, 412 (Ky. 1987) ). Second, all the comments were brief and within reason for closing argument substance. For reasons which we have already made clear, Jackson cannot overcome the fourth factor due to the strength of the evidence against him. Even if the Commonwealth included the comments purposefully, the other three factors weigh against flagrancy and overcome the intentionality condition. Therefore, none of these comments rises to the level of flagrancy and does not warrant reversal. Because Jackson's prosecutorial misconduct claims may be decided on the record as discussed, an evidentiary hearing was not required.
Next, Jackson contends the trial court abused its discretion when it denied his IAAC claim for failure to raise juror misconduct during his direct appeal. As with his prosecutorial misconduct claim, Jackson must meet the prongs of "deficiency" and "prejudice" for the Court to grant him relief. Hollon , 334 S.W.3d at 436-37. The first prong, under Hollon relating to counsel's deficient performance, requires that appellate counsel omitted the argument from the direct appeal. Id. Jackson's juror misconduct claim meets this prong of Hollon because his counsel did not raise it in his direct appeal. Therefore, Jackson must now prove his appellate attorney's deficiency in excluding juror misconduct satisfies the remaining "prejudice" prong under Hollon .
To prove the alleged juror misconduct resulted in prejudice against him, Jackson must show there is a "reasonable probability that the appeal would have succeeded" had the appellate attorney raised the claim. Id. at 437. Juror misconduct issues touch on the constitutional right to an impartial jury. Sluss v. Commonwealth , 381 S.W.3d 215, 225 (Ky. 2012). Kentucky's criminal rules also protect this right. RCr 9.36(1) ("When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified."). Juror misconduct claims often result in the court's granting an evidentiary hearing. Hillard v. Commonwealth , 158 S.W.3d 758, 764 (Ky. 2005). We defer to a trial court's juror impartiality determination. Moss v. Commonwealth , 949 S.W.2d 579, 581 (Ky. 1997) (holding trial court has significant discretion in considering a challenge *622 for cause). However, when, as here, the trial court did not weigh the juror's impartiality because it did not report the potential juror bias to the parties or otherwise act on its knowledge, we need not defer to the trial court's determination. Instead, we need only determine if Jackson has made sufficient allegations to warrant an evidentiary hearing.
We must now review the evidence to determine if it supported the trial court's summary denial of Jackson's motion for an evidentiary hearing on this juror misconduct issue. Jackson's juror misconduct claim is documented in the trial video when the bailiff, who was later sworn to sequester the jury, approached the judge and reported having a familial relationship with one of the jurors. This happened outside the parties' hearing, at the bench on the last day of the four-day trial. The judge thanked the bailiff and did not forward the information to any of the parties. Because the trial court did not act on the information it received, the possibility of juror misconduct cannot be disproved. It does not matter whether the juror omitted the familial relationship with the bailiff intentionally, inadvertently, or with bad faith. The question remaining is whether the juror's conduct in failing to report the familial relationship with the bailiff who sequestered the jury violated Jackson's constitutional right to a fair and impartial jury.
It is likely trial counsel would have investigated this information if he was aware of it because he had asked the venire about relationships with people in "law enforcement" and followed-up when some jurors mentioned having relatives in the police department and prosecutor's office. Although it is speculative to assume this questioning would have occurred, the facts indicate trial counsel was not at fault for failing to ask adequate questions. See, e.g. Moss , 949 S.W.2d at 581 (holding defense bears the burden of asking sufficient questions during voir dire ). Instead, the juror appears to have concealed the familial relationship with the bailiff, whether intentionally or inadvertently, and the trial court, after receiving the information from the bailiff, did not act on it to resolve the issue. The better course to protect the trial's integrity would have been for the trial judge to disclose this information to counsel and allow them to confront the relevant juror or remove the juror as an alternate after the relationship was discovered. Notwithstanding our view of the better practice, we must decide the case on what is available on the existing record.
The Commonwealth argues it is speculative at best for Jackson to allege the juror committed misconduct or was prejudiced against him. We reject the Commonwealth's assertion that Jackson has failed to show the juror was actually biased against him. This assertion is unavailing because the juror's silence prevented discovery of any potential bias or prejudice. A juror's reticence in the face of voir dire questioning creates a "deceptive silence." Gullett v. Commonwealth , 514 S.W.3d 518, 525 (Ky. 2017). "[F]alse answers given by jurors during voir dire, even when that fact is not discovered until after trial, raise substantial constitutional issues." Sluss , 381 S.W.3d at 225. "The detrimental effect of juror mendacity on the free and fair use of a peremptory challenge is no less egregious than its effect on the inability to make a challenge for cause." Gullett , 514 S.W.3d at 525.
A review of both the oral ruling and the trial court's written order shows there are no facts in the record to discern which juror was related to the bailiff who sequestered the jury, whether the juror intentionally concealed the juror's familial relationship, how close the relationship *623 was, or if the juror was excused as an alternate. These facts are necessary to decide if the juror's failure to disclose his relationship reaches the level of juror misconduct or, ultimately, whether Jackson's right to a fair and impartial jury was compromised. Doubt about a trial's fairness must be resolved in the defendant's favor. Randolph v. Commonwealth , 716 S.W.2d 253, 255 (Ky. 1986), overruled on other grounds by Shannon v. Commonwealth , 767 S.W.2d 548 (Ky. 1988) (granting a new trial when a juror failed to disclose during voir dire the fact she was employed at the Commonwealth's Attorney's office).
It is well-established that evidentiary hearings are critical to resolving juror misconduct cases. See Smith v. Phillips , 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982) ("the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). The Sixth Circuit has remanded for a hearing under similar circumstances when a juror did not disclose his mother was the bailiff in the same courtroom. Grooms v. Jago , 803 F.2d 719, *2 (6th Cir. 1986). On remand, the trial court must determine whether a motion challenging the juror for cause would have been granted. Moss , 949 S.W.2d at 581. "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." Gullett , 514 S.W.3d at 524 (quoting McDonough Power Equipment, Inc. v. Greenwood , 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) ).
Here, there are material issues of fact which must be resolved, and the trial court heard sufficient juror misconduct allegations to warrant an evidentiary hearing. It is the juror's apparent misstatement or omission during voir dire that prevented Jackson's further inquiry. Sluss , 381 S.W.3d at 224. Jackson adequately supported his juror misconduct allegation with the known facts and the trial court disbelieved them. Id. (finding the movant had "placed in the record sufficient evidence of the [juror's] answer's falsity to require further inquiry"). The record does not refute Jackson's allegations of a familial relationship between a juror and one of the bailiffs, nor does it disprove the possibility of bias based on this relationship. All this information exists outside the record and has not been refuted. Considering the trial court did not hear evidence concerning Jackson's juror misconduct allegations, we reject the assertion that Jackson has failed to meet his burden of proof. Until evidence is presented, it is premature to conclude Jackson cannot meet the required burden. Therefore, the trial court abused its discretion in ruling Jackson's juror misconduct allegations did not warrant an evidentiary hearing. On remand, the trial court must hold an evidentiary hearing to resolve these factual issues.
Because Jackson's juror misconduct claim cannot be refuted by the record as it stands, and the relief commonly awarded for juror misconduct is an evidentiary hearing which provides some due process relief, this claim would have been more successful than the other failed claims Jackson's appellate attorney argued. Accordingly, Jackson has proven the elements of IAAC and should be awarded an evidentiary hearing because it is the relief he would have received had juror misconduct been raised in his direct appeal.
For the foregoing reasons, we affirm in part the Jefferson Circuit Court's order relating to Jackson's prosecutorial misconduct allegations and vacate in part the order denying Jackson's motion to vacate his sentence entered January 20, 2017, and remand for further proceedings including *624 an evidentiary hearing on Jackson's juror misconduct allegation.
ALL CONCUR.

Kentucky Rules of Criminal Procedure.

Kentucky Revised Statutes.

We will address the Commonwealth's quotation and reference, although we were able to locate the quote only through our own record review for the purpose of determining the overall fairness of the trial. We remind the parties it is their obligation under Civil Rule (CR) 76.12 to parse the record and provide adequate citation thereto to support their claims and arguments.