RENDERED:  MARCH 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0309-MR

DARRELL JACKSON                                                          APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.           HONORABLE OLU A. STEVENS, JUDGE
ACTION NO. 13-CR-000616


COMMONWEALTH OF KENTUCKY                                      APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND COMBS, JUDGES.

COMBS, JUDGE:  This criminal appeal arises from an allegation by the

Appellant, Darrell W. Jackson (Jackson), of ineffective assistance of appellate

counsel (IAAC) pursuant to RCr[1] 11.42.  His first appeal of this issue resulted in

our remanding the case to the circuit court for an evidentiary hearing.  This second

---

[1] Kentucky Rules of Criminal Procedure.

appeal alleges error resulting from the evidentiary hearing. After our review, we affirm.

A jury convicted Jackson of first-degree manslaughter, and the trial court imposed a sentence of twenty-years' imprisonment. On direct appeal, our Supreme Court affirmed Jackson's conviction. *Jackson v. Commonwealth*, 481 S.W.3d 794 (Ky. 2016).

On August 29, 2016, Jackson, *pro se*, filed a motion pursuant to RCr 11.42 and the Kentucky and United States Constitutions to vacate, set aside, or correct the sentence. In his supporting memorandum, Jackson argued that appellate counsel was ineffective for failing to raise an issue of possible juror misconduct. Jackson alleged that on the last day of trial, July 18, 2014, a bailiff "approached the bench and discreetly informed the Court that he had a close family member on the jury. The Judge thanked him for making it aware and the trial continued with nothing more about the matter ever [being] brought up." Jackson argued that the matter should have been made known to him and acknowledged that trial counsel could not have properly objected as he had never been made aware of the issue by the trial court. However, Jackson argued that the failure of his appellate counsel to raise the issue on appeal as palpable error constituted ineffective assistance.

Jackson explained that during the July 15, 2014, *voir dire*, trial counsel had asked the jury pool if anyone had a close friend or family member in law enforcement, the FBI, the prosecutor's office, or corrections.

> Approximately 4 Jurors raised their hand, but not one of them asserted to having a family member as a bailiff which worked in that particular courthouse on that particular floor. The closes[t] would be a Juror who said she had a family member who was a retired correctional officer.

> The fact that this mysterious Juror did in fact have family who worked in law enforcement within the actual functions of the Courtroom and did not make the court aware raises serious questions as to their ability to render an unbiased and fair verdict.

> The Movant argues that, the appropriate relief at the very least would have to be [an] evidentiary hearing on the matter of potential Juror misconduct.

On January 20, 2017, the trial court entered an opinion and order denying Jackson's motion for RCr 11.42 relief -- and also denying his motions for an evidentiary hearing and to proceed *in forma pauperis.*

Jackson appealed. On January 4, 2019, this Court rendered an Opinion Affirming in Part, Vacating in Part, and Remanding in *Jackson v. Commonwealth*, 567 S.W.3d 615 (Ky. App. 2019). With respect to Jackson's IAAC claim for failure to raise juror misconduct in his direct appeal, this Court explained as follows:

Jackson must meet the prongs of "deficiency" and "prejudice" for the Court to grant him relief. *Hollon*, 334 S.W.3d at 436-37.[2] The first prong . . . relating to counsel's deficient performance, requires that appellate counsel omitted the argument from the direct appeal. *Id.* Jackson's juror misconduct claim meets this prong . . . . Therefore, Jackson must now prove . . . the remaining "prejudice" prong under *Hollon*.

To prove the alleged juror misconduct resulted in prejudice against him, Jackson must show there is a "reasonable probability that the appeal would have succeeded" had the appellate attorney raised the claim. *Id.* at 437. Juror misconduct issues touch on the constitutional right to an impartial jury. *Sluss v. Commonwealth*, 381 S.W.3d 215, 225 (Ky. 2012). Kentucky's criminal rules also protect this right. RCr 9.36(1) ("When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified.").

. . .

It is well-established that evidentiary hearings are critical to resolving juror misconduct cases. *See Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982) ("the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). . . . On remand, the trial court must determine whether a motion challenging the juror for cause would have been granted. *Moss*, 949 S.W.2d at 581. "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Gullett* [*v. Commonwealth*, 514 S.W.3d 518, 524

---

[2] *Hollon v. Commonwealth*, 334 S.W.3d 431 (Ky. 2010) (recognizing IAAC claims based upon appellate counsel's alleged failure to raise a particular issue on a direct appeal).

(Ky. 2017)] (quoting *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)).

. . .

Because Jackson's juror misconduct claim cannot be refuted by the record as it stands, and the relief commonly awarded for juror misconduct is an evidentiary hearing which provides some due process relief, this claim would have been more successful than the other failed claims Jackson's appellate attorney argued. Accordingly, Jackson has proven the elements of IAAC and should be awarded an evidentiary hearing because it is the relief he would have received had juror misconduct been raised in his direct appeal.

*Id.* at 621-23.

On October 11, 2019, the trial court conducted an evidentiary hearing pursuant to our remand instructions. The juror in question, Kara O'Bannon, testified first. The deputy, Michael Brown, is related to her father. She calls him "uncle" -- only because he is an elder -- and not because he is actually an uncle. Ms. O'Bannon testified that she does not have Brown's phone number, that she does not know his children, and that they do not communicate other than seeing each other randomly.

Ms. O'Bannon did not specifically recall the questions posed during *voir dire*; however, she explained that she had served on jury duty before, and she disclosed that she has relatives in law enforcement and that her brother is military. A portion of the *voir dire* record was played during the evidentiary hearing and

-5-

reflected that O'Bannon responded that her brother is military police and that her uncle is a retired sheriff. The trial court asked that the question posed to the jurors at *voir dire* be played, clarifying that a "close friend or family member was the question."

Ms. O'Bannon was referring to Brown when she testified that she had an uncle who was a retired sheriff. She did not know that Brown was still working at the time. She did not know he was acting as a bailiff until she saw him. Ms. O'Bannon could not recall at what point during the trial she saw Brown. When asked if she spoke to Brown at any time before she was excused as a juror, Ms. O'Bannon responded, "probably not."

On cross-examination Ms. O'Bannon testified that she has not seen Brown since the case. He is her "uncle," but he is more distantly related to her father, who has been dead for ten years. She thinks that Brown is actually her third cousin. In her family, they routinely refer to elders as "uncles" or "aunts" as a reflection of age rather than a fact of consanguinity.

Deputy Michael Brown testified. He is employed by the Jefferson County Sheriff's Office and works as a Deputy Sheriff in the courtroom. He testified that Ms. O'Bannon is a cousin; her grandfather and his mother are brother and sister. He would see Ms. O'Bannon at family functions; he summed up by noting, "that's about it."

Deputy Brown believes that he replaced Deputy Winstead at Jackson's trial. Deputy Brown was present when the jury went out, and he sat at the door waiting on the jury. He escorted the jury. Deputy Brown recognized Ms. O'Bannon when the jury took a break. He then notified the judge that she was a cousin. He did not discuss this disclosure with anyone else. Deputy Brown did not speak to Ms. O'Bannon at any time **before she was excused as a juror** at the conclusion of the trial.

The trial court asked Deputy Brown if he was the deputy assigned to this courtroom. He testified that he was not. He had not been in the courtroom during *voir dire*. He replaced the assigned deputy whom he believed to be John Winstead.

The matter was submitted on briefs. By Order entered December 2, 2019, the trial court denied Jackson's motion pursuant to RCr 11.42, announcing, as follows:

> The question is whether the juror was being untruthful during *voir dire* when she and other jury panel members were asked whether they had a "close friend or family member" in law enforcement.
>
> The deputy sheriff, Michael Brown, who disclosed the relationship to the trial judge was not the same deputy sheriff present during *voir dire*. That deputy sheriff, John Winstead, was the regularly assigned deputy sheriff to the trial judge and division of Jefferson Circuit Court. On the last day of trial, Deputy Winstead was absent. . . . Deputy Brown . . . was temporarily assigned on the last

-7-

day of trial and at that time he indicated his relation to one of the jurors. . . .

The trial judge decided against interrupting the jury trial on the last day to make inquiry as to the relation between a juror and a deputy sheriff temporarily assigned to the trial judge and courtroom during a shift change at the Jefferson County Sheriff's Office. . . .

During the evidentiary hearing, the juror in question acknowledged her relationship to Deputy Michael Brown. She said Deputy Brown was a friend of the family and she referred to him as her "play uncle." They are of no familial relation. She testified she could not recall the last time she saw Deputy Brown before the trial and could not recall whether or not she had seen him since. The inquiry of the entire jury panel called for a response if a juror had a "close friend or family member" in law enforcement. The Court finds Deputy Brown is neither. Notwithstanding, Deputy Brown was not present in the courtroom on the day of *voir dire*. Under the circumstances, any concern about juror misconduct would seemingly center on the juror's failure to disclose her relation to a deputy sheriff present in the courtroom at the time of questioning. That was not the case here. The Court finds no juror misconduct. The Court finds the contrary. The juror in question discharged her duties in compliance with her oath and took no action and made no omission that compromised the rights of the Defendant.

Jackson appealed. "[W]hen reviewing a trial court's findings of fact following an RCr 11.42 evidentiary hearing, an appellate court utilizes the clearly erroneous standard set forth in CR[3] 52.01. Findings of fact are not clearly

---

[3] Kentucky Rules of Civil Procedure.

erroneous if supported by substantial evidence." *Saylor v. Commonwealth*, 357

S.W.3d 567, 570-71 (Ky. App. 2012) (internal citations omitted).

> Appellate review concerning IAAC under an RCr 11.42 motion employs an abuse of discretion standard. In determining whether a trial court's actions amount to an abuse of discretion, we must consider whether the decision reflected arbitrariness, unreasonableness, unfairness or a lack of support from sound legal principles."

*Jackson*, 567 S.W.3d at 619-20 (internal citations omitted).

Jackson argues that his constitutional rights to a fair and impartial jury were violated. He contends that Ms. O'Bannon should have been stricken for cause because the test of totality of the circumstances supports a finding of presumptive bias by a juror. We do not agree. In *Ward v. Commonwealth*, 695 S.W.2d 404, 407 (Ky. 1985), our Supreme Court explained:

> [T]he law is well stated in *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4, 7 (1981):
>
>> [I]rrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has **such a close relationship**, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses.
>>
>> **Once that close relationship is established**, without regard to protestations of lack of bias, the court should sustain a challenge for cause and excuse the juror.

(Emphases added.)

-9-

In the case before us, no close relationship was established that would support the presumptive bias of the juror or a challenge for cause. The trial court explained that the inquiry of the entire jury panel called for a response if a juror had a **close** friend or family in law enforcement. The trial court found that Deputy Brown did not fit the description. It also found that there was no juror misconduct. Substantial evidence supports these findings. Ms. O'Bannon testified that she did not see Brown other than randomly, that she did not know his children, and that she did not have his phone number. Ms. O'Bannon answered the *voir dire* questions honestly. The fact that she mistakenly believed that Brown was retired at the time only reinforces the remoteness of any relationship. *George v. Commonwealth*, 885 S.W.2d 938, 941 (Ky. 1994) (no evidence of close relationship to create presumption of bias where juror realized that victim was his third cousin while she was testifying: "[F]amilial relationship was tenuous as evidenced by the juror not being initially aware of a relationship.").

We agree with the trial court that Ms. O'Bannon took no action and made no omission that compromised Jackson's rights. As the Commonwealth states in its brief, "[t]here was no meritorious claim or valid claim to be raised by appellate counsel as to the issue of juror misconduct by way of a failure to disclose or due to mendacity, so there could have been no error." We agree and thus find no abuse of discretion.

-10-

Jackson next argues that the trial court erred by misstating the facts and misinterpreting the law as it relates to the family relationship between Ms. O'Bannon and Deputy Brown. In its order of the December 2, 2019, the trial court did make the statement that"[t]hey are of no familial relation."[4] That statement is erroneous insofar as Ms. O'Bannon and Deputy Brown are cousins of some degree. Regardless, however, the error is harmless and does not require reversal in light of our determination that substantial evidence supports the trial court's finding that Deputy Brown is neither a **close** friend nor a **close** family member. We note the language of RCr 9.24 that defines "harmless error" as follows:

> No error . . . in any ruling or order . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice.

In light of this rule, we have no basis to disturb the order at issue.

Because the remainder of Jackson's second argument is substantially repetitive, we decline to address it.

We AFFIRM the order of Jefferson Circuit Court of December 2, 2019, denying Jackson's motion claiming ineffective assistance of counsel pursuant to RCr 11.42.

---

[4] Record on appeal at page 284.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Andrea Reed
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General
Frankfort, Kentucky