# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 20, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0076-MR

ANDRE TOMPKINS                                       APPELLANT

|  | ON APPEAL FROM MCCRACKEN CIRCUIT COURT |
|---|---|
| V. | HONORABLE TIMOTHY KALTENBACH, JUDGE |
|  | NO. 19-CR-00727 |

COMMONWEALTH OF KENTUCKY                        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Andre Tompkins (Tompkins) was convicted of one count of first-degree rape; two counts of first-degree sodomy; one count of incest, victim under eighteen; one count of criminal attempt to commit second-degree rape; two counts of second-degree sodomy; and one count of first-degree sexual abuse. Receiving a sentence of thirty-one years, he now appeals his convictions to this Court as a matter of right.[1] After review, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The only issue raised by Tompkins that merits review concerns alleged juror misconduct. We therefore need not discuss the underlying facts supporting his convictions, but for context some background information is

---

[1] Ky. Const. § 110.

required.  Tompkins' sole victim was his biological daughter, Alice,[2] who was thirteen at the time of the offenses and fifteen at the time of trial.  Alice's biological mother passed away due to a mitral valve prolapse when Alice was eighteen months old.  Alice was therefore raised by her maternal grandmother (S.A.).  S.A. was a witness for the Commonwealth during Tompkins' trial.

During *voir dire*, the trial court, the Commonwealth, and defense counsel each questioned the *venire*.  Going first, the trial court asked the Commonwealth to list the witnesses it intended to call, which included S.A.  The court asked if anyone knew any of the Commonwealth's witnesses, and no one responded that they knew S.A.  Later, the Commonwealth also inquired whether anyone knew S.A., but again no one in the *venire* responded affirmatively.  Finally, the defense asked if anyone knew Alice's deceased mother; no one responded that they did.

After a two-day trial, the jury was released to deliberate at 10:02 a.m.  On the same day at 4:32 p.m., while the jury was deliberating, defense counsel brought an issue to the court's attention.  Counsel stated:

> Ms. Belinda Lawrence has just alerted me to something.  She's from here and she's really plugged in in the community and knows a lot of people that I just don't know because I'm not from here.  But one of our jurors, Fernandez Hill, the African American male on the jury, Belinda, who's in the back ready to give some testimony, Belinda Lawrence drove him on the school bus when he was a child in school.  Belinda has told me that it's her belief that Fernandez Hill knows [Alice's deceased mother].  So, basically what I'm saying is, we believe that when there was some *voir dire*

---

[2] This Court will utilize pseudonyms and initials to protect the child's anonymity.

2

concerning whether any of the potential jurors knew any of the potential parties that perhaps Mr. Fernandez Hill might not have disclosed that he might know the victim's deceased mother. And if he does know that and he didn't disclose it he could have shared some outside information with the jury concerning [Alice's mother's] death from a drug overdose and some of the surrounding rumors that [Tompkins] was responsible for that death. We'd like to take some testimony from [Belinda].

The trial court denied defense counsel's request to take Belinda's testimony by avowal, but noted that counsel was "entitled to file motions." Later, after the jury had announced that it had reached a verdict but before the verdict was read, defense counsel made a second request as follows:

Your honor I move for a mistrial based on juror misconduct. I first made the argument before, but I actually neglected to make the mistrial motion which I'm making now. I'd further buttress my argument by stating that I've also found out that Fernandez Hill may have some relatives who are married to, I think, [S.A.'s] sister and [S.A.] testified twice in this trial. So, in addition to knowing [Tompkin's] deceased significant other, the mother of the victim, Mr. Hill may have some family members who are married to [S.A.'s] relatives, I think [S.A.'s] sister. And that's why I wanted to get some testimony earlier from [Belinda] just so I could question that on the record.

The trial court denied the motion for a mistrial.

Following Tompkins' conviction, his defense counsel did not file a motion for a new trial under RCr[3] 10.02[4] based on Juror Hill's alleged mendacity, nor did counsel take Belinda's testimony via an affidavit to be included in the record on appeal.

---

[3] Kentucky Rule of Criminal Procedure.

[4] RCr 10.02(1) ("Upon motion of a defendant, the court may grant a new trial for any cause which prevented the defendant from having a fair trial, or if required in the interest of justice.").

3

Additional facts are discussed below as necessary.

## II.    ANALYSIS

Tompkins' primary arguments on appeal are that the trial court erred when it failed to elicit testimony from Belinda, and that reversible error occurred due to Juror Hill's failure to truthfully answer questions during *voir dire*. Addressing the former argument will be dispositive.

Procedurally, this case is a bit of an oddity. As the Commonwealth points out, allegations of juror misconduct are typically addressed post-trial during a hearing on a motion for a new trial.[5] Tompkins argues in response that he "was not obligated to file a motion for a new trial as the issue was brought to the trial court during trial." That may be so for the purposes of preserving the issue, but as a practical matter it greatly diminishes the facts that would have otherwise been available to this Court to address this appeal. Had a hearing occurred, the trial court could have taken testimony and made findings regarding whether Juror Hill knew Alice's deceased mother or had a relative who was married to S.A.'s sister. But, without such a hearing to review, our focus is necessarily narrowed to the following question: did the trial court err by declining to inquire further into the matter based on the allegations made by counsel? We hold that it did not.

---

[5] *See, e.g., Gullett v. Commonwealth*, 514 S.W.3d 518, 522 (Ky. 2017); *Sluss v. Commonwealth*, 381 S.W.3d 215, 220-21 (Ky. 2012); *Anderson v. Commonwealth*, 864 S.W.2d 909, 911 (Ky. 1993); *Paenitz v. Commonwealth*, 820 S.W.2d 480, 481 (Ky. 1991). *See also Jackson v. Commonwealth*, 567 S.W.3d 615, 623 (Ky. App. 2019) ("It is well-established that evidentiary hearings are critical to resolving juror misconduct cases.").

To begin, Belinda was not a witness for either party and was seemingly there solely to observe the trial. The trial court therefore had no way to establish her credibility or to know what her motivations were for bringing these allegations to the attention of Tompkins' defense counsel. Further, the only asserted bases for her beliefs were that she was "plugged in" to the community, and drove Tompkins on the school bus when he was a child.[6] It is notable that Belinda did not allege that she also drove Alice's deceased mother on the school bus.

In addition to this shaky foundation, counsel's allegations were exceptionally vague. Counsel stated that it was Belinda's "belief" that Juror Hill knew Alice's mother; that "*perhaps* Juror Hill *might not* have disclosed that he *might* know the victim's deceased mother"; that he "*may* have some family members who are married to [S.A.'s] relatives"; and that Juror Hill "*could* have shared some outside information with the jury concerning [Alice's mother's] death from a drug overdose and some of the surrounding rumors that [Tompkins] was responsible for that death," even though it was stated several times that Alice's mother died due to a heart condition.[7]

The trial court declined to hear testimony from Belinda while the jury was deliberating, but told defense counsel he was "entitled to file motions." The trial court undoubtedly anticipated that defense counsel would file a

---

[6] Tompkins was thirty-two years old at the time of the trial.

[7] (Emphasis added).

motion for a new trial based on this information, as is the typical practice, and that the issue could thereby be addressed more fully. Based on the foregoing, we cannot say that the trial court erred by declining to take testimony from Belinda.

Moreover, we hold that these bare assertions to not entitle Tompkins to remand and an evidentiary hearing under *Sluss v. Commonwealth*.[8] In *Sluss*, the defense filed a post-trial motion for a new trial on the basis of juror misconduct.[9] The motion alleged that during *voir dire* two individuals that were later selected as jurors stated that they did not know the victim, her family, or the circumstances surrounding the case.[10] One of those jurors also stated that she did not use Facebook.[11] With the defense's motion for a new trial, it filed screenshots of the victim's mother's Facebook friends, which included two individuals with the same names as the two jurors in addition to screenshots from the victim's mother's Facebook page discussing information about her child's death.[12] The *Sluss* Court held that, while the appellant had not shown that his conviction was tainted, he had "**included in the record sufficient evidence** that one of the jurors appears to have lied explicitly (about having a Facebook account) during individual voir dire and that both jurors

---

[8] 381 S.W.3d 215 (Ky. 2012).

[9] *Id.* at 220-21.

[10] *Id.* 221.

[11] *Id.*

[12] *Id.*

may have lied by omission[.]"[13]  The Court accordingly remanded for a hearing to further flesh out the allegations of juror mendacity.[14]

Here, because Tompkins' counsel did not elect to take part in a hearing on a motion for a new trial or to take Belinda's affidavit for inclusion in the record on appeal, we have no such evidence.  Instead, there are only vague, second-hand assertions that Juror Hill *might* have known Alice's deceased mother and *might* be related to S.A. through marriage.  We therefore hold that Tompkins has not presented sufficient evidence that Juror Hill was dishonest during *voir dire*, and he is not entitled to remand and a hearing under *Sluss*.

Tompkins also alleges that the trial court erred by denying his motion for directed verdict.  However, the Commonwealth argues, and we agree, that this issue was not properly preserved for our review.

At the close of the Commonwealth's evidence, the defense made the following motion: "I'd make a motion for directed verdict on all counts.  Our position is that the Commonwealth carries the burden of persuasion and they simply have not proven each and every element of each and every offense.  No further additional argument."  Later, at the close of all the evidence, the defense renewed its motion for directed verdict as follows:

> I'd make a motion for directed verdict on all counts.  It's our position that the Commonwealth simply has not proven its case at all.  The only evidence they really presented is an allegation from a child and some medical results that don't identify where the source of injury came from.  So, the proof they put on has just been insufficient, so we ask for a directed verdict on all counts.

---

[13] *Id*. at 229 (emphasis added).

[14] *Id*.

As this Court has held numerous times, in order to preserve the argument that a trial court erred by denying a criminal defendant's motion for directed verdict, the defendant must:

> (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; and **identify the particular charge the Commonwealth failed to prove, and must identify the particular elements of that charge the Commonwealth failed to prove**.[15]

"Insufficiently specific motions, such as moving summarily for a directed verdict or making a general assertion of insufficient evidence, are not enough to satisfy the specificity requirement."[16]

Here, Tompkins' counsel did not identify which charges the Commonwealth failed to prove or which of the particular elements of those charges the Commonwealth failed to prove. This issue was therefore not properly preserved for our review. Tompkins did not request review for palpable error review under RCr 10.26.[17] "Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is

---

[15] *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020) (emphasis added).

[16] *Early v. Commonwealth*, 470 S.W.3d 729, 733 (Ky. 2015).

[17] RCr 10.26 ("A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.").

made and briefed by the appellant."[18]  Consequently, we decline to review this allegation of error.

## III.   CONCLUSION

Based on the foregoing, we affirm.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Roy Alyette Durham II
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General

---

[18] *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008).