COMMONWEALTH of Kentucky, Appellant

v.

Jasper POLLINI, Appellee.

No. 2012–SC–000312–DG.

Supreme Court of Kentucky.

April 17, 2014.

Rehearing Denied Aug. 21, 2014.

---

Jack Conway, Jeffrey Allan Cross, Counsel for Appellant.

Timothy G. Arnold, Angela Elaine Slaton, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

A Jefferson Circuit jury found Appellee, Jasper Pollini, guilty of complicity to murder, complicity to first-degree burglary, complicity to second-degree burglary, and complicity to receiving stolen property over $300. After Appellee's sentence of life imprisonment was affirmed by this Court, he filed an RCr 11.42 motion in the

trial court alleging, among other things, that appellate counsel had rendered ineffective assistance by failing to brief the issue of the trial judge's ex parte written communication with the jury after it had retired for deliberations. The circuit court denied Appellee's motion, and the Court of Appeals affirmed the order denying relief, holding that Appellee's claim of ineffective assistance of appellate counsel (IAAC) was not cognizable.

This Court subsequently vacated the Court of Appeals' decision and remanded the case for reconsideration in light of our holding in *Hollon v. Commonwealth*, 334 S.W.3d 431 (Ky.2010). In *Hollon*, we recognized that IAAC claims premised upon appellate counsel's alleged failure to raise a particular issue on direct appeal were cognizable in Kentucky. *Id.* at 436. On remand, the Court of Appeals ruled that Appellee's direct appeal counsel had rendered deficient performance by failing to brief the ex parte communication issue and granted Appellee a new trial.

We granted discretionary review, and the Commonwealth now argues that we should reverse the Court of Appeals because (1) Appellee waived his IAAC claim on appeal, (2) the Court of Appeals erred by concluding that Appellee's RCr 9.74 issue could have succeeded on direct appeal, and (3) the Court of Appeals failed to consider the experience of Appellee's direct appeal counsel. For the following reasons, we reverse the Court of Appeals and reinstate the trial court's order denying Appellee's RCr 11.42 motion.

## I. BACKGROUND

The factual background underlying Appellee's convictions has been thoroughly recounted in *Pollini v. Commonwealth*,

172 S.W.3d 418 (Ky.2005), and reiterated in *Pollini v. Commonwealth*, No. 2006–SC–000835–MR, 2008 WL 203035 (Ky. Jan. 24, 2008). These cases explain that, in the early morning hours of May 7, 2002, Appellee burglarized two residential garages. The burglaries were the beginning of a chain of events that ended with Appellee shooting and killing Byron Pruitt.

Appellee was subsequently indicted for murder and the garage burglaries, and his sister, Crystal Plank, was indicted for lesser offenses related to the incident. Appellee and Plank were tried together. After the jury had retired for deliberation, it requested a copy of Plank's witness statement to the police. The trial judge, without notifying the parties, advised the jury that no transcript was available.[1]

Appellee was ultimately convicted of murder, first-degree burglary, second-degree burglary, and receiving stolen property as noted.

## II. ANALYSIS

### A. Appellee Did Not Waive His IAAC Claim on Appeal of His RCr 11.42 Motion

As stated above, our principal reason for granting discretionary review in this case was to consider whether the Court of Appeals properly applied *Hollon* in its review of Appellee's IAAC claim. However, we will first address the Commonwealth's argument that Appellee waived his IAAC claim on appeal of his RCr 11.42 motion. The Commonwealth contends that Appellee did not brief an IAAC claim to the Court of Appeals and that it was improper for the Court to consider the claim sua sponte.

---

1. The exact wording of the jury's request was, "Does there exist a transcript of the Plank conversation w/ Police? Difficult to locate on the tape. If so, can we pls request?" In response, the trial judge wrote, "There's none available."

The Commonwealth admits that Appellee made a claim of IAAC in his RCr 11.42 motion to the circuit court; however, it asserts that Appellee abandoned the IAAC claim on his appeal of the trial court's denial of his motion. The Commonwealth supports its argument by contrasting Appellee's brief to the Court of Appeals with his earlier RCr 11.42 motion to the trial court. The Commonwealth points out that Appellee's argument pertaining to the ex parte communication issue is almost word-for-word the same in the RCr 11.42 motion as it is in the appellate brief. However, the appellate brief's issue heading uses the term "trial counsel" rather than just "counsel," as was used in the RCr 11.42 motion. The Commonwealth points to several other similar changes in Appellee's briefs to support its proposition that appellate counsel consciously abandoned the IAAC claim on appeal of the RCr 11.42 motion.

■ Nonetheless, even assuming the Commonwealth is correct that Appellee failed to adequately assert his IAAC claim in his appeal of the RCr 11.42 motion, the Commonwealth has not cited any legal authority in support of its claimed relief. The cases cited by the Commonwealth demonstrate that, generally, appellate courts will decline to reach issues an appellant raised in a lower court but failed to brief on appeal. *See Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky.2004) (holding that failure to address discovery request in appellate brief constituted a waiver of the issue); *Commonwealth v. Bivins*, 740 S.W.2d 954, 956 (Ky.1987) ("Normally, assignments of error not. argued in an appellant's brief are waived."). These cases prove only that appellate courts are *permitted* to ignore claims that have not been adequately raised for review. However, these cases do not go so far as to *require* appellate courts to ignore claims that have not been thoroughly briefed on appeal.

■ In fact, this Court has explicitly stated that an appellate court may decide an issue not briefed on appeal when that issue "flows naturally under our appellate review of the issue raised." *Barker v. Commonwealth*, 341 S.W.3d 112, 114 (Ky. 2011); *see also Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky.1991) ("When the facts reveal a fundamental basis for decision not presented by the parties, it is our duty to address the issue to avoid a misleading application of the law."). Given that this case was remanded to the Court of Appeals to be reconsidered in light of our holding in *Hollon* that IAAC is a cognizable claim in Kentucky, the issue of whether Appellee's appellate counsel was ineffective could certainly be deemed to "flow naturally" from the Court of Appeals' review of the issues on appeal. *See Barker*, 341 S.W.3d at 114. Accordingly, we find no error in the Court of Appeals' consideration of Appellee's IAAC claim. Thus, the Commonwealth's first argument does not justify reversal of the Court of Appeals.

**B. The Court of Appeals Erred by Ruling in Favor of Appellee's IAAC Claim**

The Commonwealth next argues that the Court of Appeals erroneously determined that Appellee suffered ineffective assistance of appellate counsel. More specifically, the Commonwealth argues: (1) that Appellee failed to prove that the ex parte communication issue was "clearly stronger" than the other issues briefed by his appellate counsel and (2) that Appellee also failed to show he was prejudiced by appellate counsel's failure to brief the issue.

■ Under the standard articulated by this Court in *Hollon*, to succeed on an

IAAC claim premised upon appellate counsel's alleged failure to raise a particular issue on direct appeal, the defendant must establish that "counsel's performance was deficient, overcoming a strong presumption that appellate counsel's choice of issues to present to the appellate court was a reasonable exercise of appellate strategy." 334 S.W.3d at 436. The omitted issue must be "clearly stronger" than those presented for the presumption of effective assistance to be overcome. *Id.* Additionally, the defendant must also establish that "he or she was prejudiced by the deficient performance, which ... requires a showing that absent counsel's deficient performance there is a reasonable probability that the appeal would have succeeded." *Id.* at 437. Put more concisely, our evaluation of an IAAC claim will require a showing of deficient performance plus prejudice. *See id.* at 436–37. We review the components of an IAAC claim *de novo. See Brown v. Commonwealth,* 253 S.W.3d 490, 500 (Ky.2008) ("On appeal, the reviewing court looks *de novo* at counsel's performance and any potential deficiency caused by counsel's performance.").

■ Here, Appellee properly argues both deficient performance and prejudice. However, the deficient performance component of an ineffectiveness claim need not be addressed first. *See Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). As explained above, the deficient performance prong of the *Hollon* IAAC standard requires Appellee to prove that the issue appellate counsel failed to brief was "clearly stronger" than the issues that it did brief on appeal. *Hollon,* 334 S.W.3d at 436. In light of the difficulty of assessing the relative strengths of each of the numerous claims Appellee argued on direct appeal, we begin our analysis of Appellee's IAAC claim by considering whether Appellee was actually prejudiced by direct appeal counsel's failure to brief the issue of the trial judge's ex parte communication with the jury.

As previously explained, the jury requested a copy of Plank's witness statement to the police, and the trial judge responded in writing, without notifying either party of the request, that none was available. Now, Appellee argues that the trial judge's ex parte communication with the jury was a violation of RCr 9.74, and that direct appeal counsel's failure to brief the issue prejudiced him.

■ We agree with Appellee that the trial judge violated RCr 9.74, which states, "No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant ... and the entire jury, and in the presence of or after reasonable notice to counsel for the parties." The trial judge in this case violated the plain language of RCr 9.74 when, after receiving a request for information from the jury after it had retired for deliberation, he responded outside the presence of Appellee and without having provided reasonable notice to counsel for both parties. *See McAtee v. Commonwealth,* 413 S.W.3d 608, 625 (Ky.2013).

However, appellate counsel's failure to brief the issue of the trial judge's violation of RCr 9.74, standing alone, does not necessarily establish the prejudice component of an IAAC claim. To prove prejudice, Appellee must make a "showing that absent counsel's deficient performance there is a reasonable probability that the appeal would have succeeded." *Hollon,* 334 S.W.3d at 437. Thus, we must determine whether the appeal would have succeeded if not for appellate counsel's failure to brief

the ex parte communication issue on direct appeal.

If the trial court's violation of RCr 9.74 was harmless error in this instance, as alleged by the Commonwealth, it would not have provided grounds for a successful direct appeal. Therefore, we must first determine whether the trial court's written communication with the jury was harmless error if we are to assess whether Appellee was prejudiced by appellate counsel's failure to brief the issue.

However, Appellee argues that we should not consider whether the trial judge's RCr 9.74 violation was harmless error because, at the time his appellate brief was filed, in 2004, this Court viewed any and all ex parte communications between a judge and jury as structural error. According to Appellee, under the standard of review in use at the time, RCr 9.74 violations automatically amounted to reversible error. Thus, any failure of appellate counsel to brief an RCr 9.74 violation occurring in 2004 would satisfy the prejudice component of an IAAC claim because it would create a "reasonable probability that the appeal would have succeeded." *Hollon*, 334 S.W.3d at 437. The Commonwealth, for its part, asserts that the standard of review for a violation of RCr 9.74 has always been harmless error.

However, we will not conduct an inquiry into which appellate standard of review was applicable to RCr 9.74 violations in 2004 without first questioning whether the standard at issue constitutes procedural or substantive law. This Court has previously held that when a court decision results "in a procedural rather than substantive change in the law" it has retroactive application. *Commonwealth v. Alexander*, 5 S.W.3d 104, 106 (Ky.1999); *see also Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct.

2290, 53 L.Ed.2d 344 (1977)) ("[N]o *ex post facto* violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.'"). Therefore, if the standard of appellate review can be considered "procedural rather than substantive," we would retroactively apply the current standard to Appellee's case rather than exhuming whatever standard existed in 2004. *See Alexander*, 5 S.W.3d at 106.

We note that this Court has not yet considered the specific question of whether an appellate standard of review is procedural. However, in *Commonwealth v. Reneer*, 734 S.W.2d 794 (Ky.1987), we examined whether KRS 532.055, Kentucky's "truth in sentencing" statute was procedural or substantive in nature. *Id.* at 796. The primary effect of the statute was to bifurcate felony trials into guilt and sentencing phases. *Id.* Additionally, KRS 532.055 allowed the jury, during the sentencing phase, to hear certain evidence of prior convictions that would not have been admissible previously. *Id.* We held that the statute was procedural under the reasoning that "[t]he statute does not add or remove any element necessary to convict of any crime, and it does not increase or lower the penalty that can be imposed upon conviction." *Id.*

The rationale employed in *Reneer* to determine whether a statute was procedural is instructive in our present inquiry into whether an appellate. standard of review is procedural or substantive. In fact, the Fifth Circuit has adopted a similar rationale for determining whether a law is procedural, and, unlike this Court, it has had occasion to apply that reasoning to an appellate standard of review. In *United States v. Mejia*, the Fifth Circuit determined that an appellate standard of review is "procedural rather than substantive be-

cause it neither increases the punishment nor changes the elements of the offense or the facts that the government must prove at trial." 844 F.2d 209, 211 (5th Cir.1988). Additionally, in another case, the Fifth Circuit explained that an appellate standard of review is procedural because "alteration of the appellate standard of review upsets no legitimate reliance interest by a defendant; it could not have induced alteration of the behavior that led to the crime." *United States v. Bell,* 371 F.3d 239, 242 (5th Cir.2004) (citation omitted). Applying our rationale from *Reneer,* we must agree with the Fifth Circuit that an appellate standard of review is a matter of procedural, rather than substantive, law.[2]

■ In this case, the standard of review at issue (whether we ultimately determine that it is the structural or harmless error standard) will be used to review the actions of the trial judge and not the actions of Appellee. The standard of review will have no effect on Appellee's punishment or the elements of his offense, *see Reneer,* 734 S.W.2d at 796; *Mejia,* 844 F.2d at 211; nor could it have encouraged Appellee to alter his behavior prior to the crime, *see Bell,* 371 F.3d at 242 (citation omitted). Therefore, we must conclude that the appellate standard of review of the RCr 9.74 violation in this case is procedural, rather than substantive, law. Accordingly, we will apply our current standard of review to the trial judge's violation of RCr 9.74 without undertaking any consideration of what the standard may have been in 2004 or whether the. standard was different at all. *See Alexander,* 5 S.W.3d at 106.

In a recent decision from this Court, we clearly articulated that harmless error analysis is our current standard of review for a trial judge's violation of RCr 9.74. *McAtee v. Commonwealth,* 413 S.W.3d 608, 626–27 (Ky.2013); *see also Welch v. Commonwealth,* 235 S.W.3d 555, 558 (Ky.2007) (reviewing trial court's violation of RCr 9.74 for harmless error). In *McAtee,* we also defined harmless error in the context of ex parte communications between judge and jury, explaining it as "contact [that] does not impugn the fundamental fairness of an otherwise constitutionally acceptable trial." 413 S.W.3d at 626. Therefore, we will review the trial judge's violation of RCr 9.74 for harmless error by making *McAtee's* suggested inquiry into whether the error impugned the fundamental fairness of the trial. If the RCr 9.74 violation was, in fact, harmful error, then a "reasonable probability" would have existed that Appellee's direct appeal would have succeeded, which would establish the prejudice prong of our IAAC analysis. *Hollon,* 334 S.W.3d at 437.

■ We begin our analysis of whether the trial judge's actions were harmless error by noting that the Court of Appeals concluded the trial court's violation of RCr 9.74 would have been successful if raised on appeal. The Court of Appeals based its finding of prejudice on the fact that a transcript of Plank's testimony physically existed and that the trial judge misled the jury by informing them that the transcript was unavailable. However, the Court of Appeals did so without any consideration of whether the RCr 9.74 issue, assuming it had been raised on direct appeal, would have been deemed harmless and, therefore, nonprejudicial by this Court.

2. Additionally, case law reveals that the various federal appellate courts to have taken up the issue have characterized appellate standards of review as matters of procedural, rather than substantive, law. *See, e.g., United States v. Bell,* 371 F.3d 239, 241–42 (5th Cir. 2004); *United States v. Martin,* 363 F.3d 25, 46 (1st Cir.2004);· *United States v. Mallon,* 345 F.3d 943, 946–47 (7th Cir.2003); *United States v. Willey,* 350 F.3d 736, 738–39 (8th Cir.2003).

While the record reveals that a transcript of Plank's testimony did in fact exist, it is also the case that the trial court had earlier ruled that it was not admissible into evidence. Moreover, the prosecution and defense counsel never agreed to certify a transcript of Plank's testimony, and the transcript was never read in open court.[3] As such, it would have been error for the trial judge to provide the transcript to the jury. *See Sanborn v. Commonwealth,* 754 S.W.2d 534, 540 (Ky.1988), *overruled on other grounds by Hudson v. Commonwealth,* 202 S.W.3d 17 (Ky.2006) (explaining that it is reversible error to admit the prosecution's transcript of a taped witness statement when there has been no certification or agreement as to its veracity). Therefore, at the time the trial judge responded to the jury's question, he was correct in stating that there was no transcript available.

Nonetheless, Appellee does not argue that the trial court's failure to provide the Plank transcript to the jury was harmful error, rather Appellee asserts that the error was the trial court's failure to permit Appellee and his counsel to participate in how the jury's transcript question was addressed. However, since the trial judge could not have provided the transcript to the jury, defense counsel's only options would have been to agree to enter the transcript into evidence and have it read in open court or to have the jury come back into open court and listen to selected portions of Plank's taped witness statement. This would be taking place within a trial that had closed and during the time the jury was in its deliberations. Appellee's argument that he suffered harmful error is unavailing because he has not demonstrated that the exclusion of defense counsel from the formulation of the trial court's response to the jury's question "im-pugn[ed] the fundamental fairness" of the trial, as required for a finding of harmful error under *McAtee,* 413 S.W.3d at 626–27.

In retrospect, the record indicates that Appellee's counsel actively opposed the admission of transcripts of taped statements at least four times during the trial. In fact, defense counsel repeatedly asserted that audio recordings provided better evidence of a witness's statements than a subjectively prepared written transcript. Appellee even admits in his brief that his counsel consistently argued that the tape was the best evidence and that counsel most likely would have requested to play the tape for the jury again rather than read the transcript in open court. Because defense counsel was unlikely to argue that the transcript should be read in open court, we find that the deprivation of this opportunity was harmless error.

Furthermore, under the circumstances presented in this case, we also hold that it was harmless error for defense counsel to not be given the opportunity to replay, in open court, the audiotape of Plank's statement. Before the jury retired for deliberations, it was provided with an audiotape of Plank's statement, which it was allowed to listen to at will in the jury room. Although the jury was having difficulty locating Plank's statement on the audiotape, we cannot find that it was harmful error for defense counsel to be denied the opportunity to argue that the jury should watch the video in open court. The tape was still available in the jury room. It may have been more convenient for the jury if the trial court would have queued up the audiotape to the relevant portion of testimony, but the failure to do so does not constitute harmful error because it is not significant enough to "impugn the fundamental fairness of an otherwise constitutionally acceptable trial." *Id.* at 626–27.

---

**3.** The full extent of the Plank transcript's use was that the prosecution blew up a small portion of it and displayed that portion during its closing argument.

Having determined that the trial court's failure to answer the jury's question in the presence of counsel was harmless error, it is apparent that, even if it had been properly briefed by appellate counsel, the issue of the trial court's RCr 9.74 violation would not have had a "reasonable probability" of succeeding on appeal. *See Hollon,* 334 S.W.3d at 437. Therefore, Appellee has failed to establish that he was prejudiced by appellate counsel's failure to brief the 9.74 issue on direct appeal. *Id.* Accordingly, we must reverse the Court of Appeals' decision holding that Appellee suffered IAAC and reinstate the trial court's order denying Appellee's RCr 11.42 motion.

Because Appellee's failure to prove the prejudice component alone requires us to reinstate the trial court's denial of RCr 11.42 relief, we need not consider whether direct appeal counsel's performance was deficient. *See id.* at 436–37 (holding that a successful IAAC claim requires a showing of both deficient performance and prejudice). Additionally, because the Commonwealth has already shown that Appellee's RCr 11.42 claim is without merit, we decline to address the Commonwealth's argument that the Court of Appeals should have given weight to the experience of Appellee's direct appeal counsel.

### III. CONCLUSION

For the foregoing reasons, the Court of Appeals is reversed, and the trial court's order denying relief for ineffective assistance of appellate counsel is reinstated.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. KELLER, J., not sitting.