RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0369p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JASPER POLLINI,

> *Petitioner-Appellant,*

> No. 19-5131

*v.*

AMY ROBEY, Warden,

> *Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:14-cv-00689—David J. Hale, District Judge.

Argued:  August 5, 2020

Decided and Filed:  November 25, 2020

Before:  GILMAN, BUSH, and READLER, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:**  Timothy G. Arnold, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellant.  James C. Shackleford, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.  **ON BRIEF:**  Timothy G. Arnold, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellant.  James C. Shackleford, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

CHAD A. READLER, Circuit Judge.  Jasper Pollini committed a burglary, fled the scene, and, upon returning to retrieve his burglary tools, shot and killed a man.  Following his

conviction in Kentucky state court, Pollini asserted numerous grounds for relief in a federal habeas petition. The district court, however, rejected each of them.

We granted Pollini a certificate of appealability with respect to two claims relating to the alleged ineffective assistance of his appellate counsel in state court. On the first claim, we agree with the district court that the claim fails the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984). But for the other, we disagree that Pollini procedurally defaulted the claim. Accordingly, we affirm in part, vacate in part, and remand the case to the district court for further proceedings.

## I.

*Pollini's Crimes And Trial.* While burglarizing a garage late one evening, Jasper Pollini was confronted by Dan Zeigler, the garage's owner, at which point Pollini fled the scene. *Pollini v. Commonwealth*, 172 S.W.3d 418, 421 (Ky. 2005). Zeigler then alerted his neighbor, Byron Pruitt, that a burglar was in the area. *Id.*

Pollini soon realized he had left his tools in Zeigler's garage. Arming himself with a handgun, Pollini recruited his sister, Crystal Plank, to drive him back to the garage. *Id.* at 421–22. As the two neared the garage, Pruitt approached their car with a flashlight. *Id.* Seeing a light in the distance, Pollini fired a gun shot into the dark. *Id.* Tragically, the shot struck and killed Pruitt.

Pollini was charged with various crimes, including murder. Plank was charged with facilitation of murder. Following their arrests, Pollini and Plank each gave a recorded statement to the police recounting the events that unfolded the night of Pruitt's murder. Both statements assert that Pollini did not intend to kill Pruitt when the shot was fired. Because their respective charges arose out of the same set of facts, the two were tried together as co-defendants. During trial, Plank's attorney prepared a transcript of Plank's statement to the police and sought to admit the transcript along with the audiotape of her statement into evidence. The court admitted the audiotape. But it denied admission of the transcript on the grounds that the Commonwealth had not been given the opportunity to verify the transcript's accuracy in its entirety. During closing arguments, however, the Commonwealth was permitted to exhibit a portion of the transcript to

the jury. Yet during its deliberations, the jury had access to only the audiotape of Plank's statement and not the transcript.

This proved relevant when the jury had difficulty locating or understanding a portion of Plank's statement on the audiotape. That obstacle prompted the jury to write the judge to ask: "Does there exist a transcript of the Plank conversation w/Police? Difficult to locate on tape, if so, can we pls request?" Without communicating with the parties, the judge responded to the jury: "There's none available." There is no dispute between the parties that this ex parte jury communication violated Kentucky Rule of Criminal Procedure 9.74, which prohibits judge-jury communication without apprising counsel of the communication. *See Pollini v. Litteral*, No. 3:14-cv-689-DJH-RSE, 2019 U.S. Dist. LEXIS 7459, at *8 (W.D. Ky. Jan. 15, 2019); *see also* Ky. RCr 9.74 ("No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant . . . and the entire jury, and in the presence of or after reasonable notice to counsel for the parties.").

Following its deliberations, the jury found Pollini guilty of murder, burglary in the first degree and second degree, and receiving stolen property. During the ensuing sentencing phase, the court submitted to the jury the following aggravated circumstance for their consideration: Was Pollini in the process of committing burglary when he killed Pruitt? The jury answered in the affirmative, subjecting Pollini to an increased range of sentencing options. From those options, the jury recommended a life sentence without the possibility of parole for 25 years. The trial judge agreed and handed down the recommended sentence.

*Pollini's Direct Appeals*. Pollini raised a host of issues on direct appeal. Chief among them was his contention that there was insufficient evidence to justify his sentence because he was not committing a burglary when he killed Pruitt. According to Pollini, the shooting occurred after the burglary had ended, when Pollini was returning to recover his tools. The Kentucky Court of Appeals found no merit in Pollini's argument. But the Kentucky Supreme Court did, and accordingly vacated Pollini's sentence and remanded the case. Because Pollini's appellate counsel failed to seek a new trial to remedy the jury's error, the remand was limited to a resentencing without the inclusion of the aggravating circumstance. *See Pollini*, 172 S.W.3d at 432. Notable here is the fact that Plank, in raising a similar challenge to the jury's finding that

the two were committing a burglary at the time of the killing, *did* argue for a new trial on appeal. And when the Kentucky Court of Appeals vacated her conviction for facilitating burglary in the first degree for insufficient evidence, it remanded her case for a new trial. *Plank v. Commonwealth*, No. 2003-CA-001861-MR, 2005 Ky. App. Unpub. LEXIS 777, at \*22–25 (Ky. Ct. App. June 3, 2005).

On remand, Pollini's sentence was reduced to simple life imprisonment. *Pollini v. Commonwealth*, No. 2006-SC-000835-MR, 2008 Ky. Unpub. LEXIS 17, at \*2 (Ky. Jan. 24, 2008). Pollini again appealed, but to no avail. And here again, it bears comparing what Pollini and Plank argued in their respective appeals. In neither of his direct appeals did Pollini argue that the trial judge violated Rule 9.74 when it communicated ex parte with the jury. Plank, by comparison, did raise the ex parte issue on direct appeal. And while the Kentucky Court of Appeals vacated her conviction on other grounds, the court also found it "very bothersome . . . that counsel was never even given notice that [the jury] had requested the transcript." *Plank*, 2005 Ky. App. Unpub. LEXIS 777, at \*25.

*Pollini's State Court Collateral Attack.* Having exhausted his direct appeal options, Pollini, with new counsel, collaterally attacked his state court proceedings. *See* Ky. RCr 11.42 (governing motions to vacate, set aside, or correct sentences). Pollini asserted several claims of ineffective assistance of counsel. Among them was Pollini's Rule 9.74 argument that his prior counsel was constitutionally ineffective, in violation of the Sixth Amendment standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), because "counsel failed to raise the improper ex parte communication between the trial court and the jury." Unlike the other ineffective assistance of counsel claims Pollini asserted, which he expressly limited to the conduct of his trial counsel, Pollini did not specify which counsel—trial or appellate—failed to raise the Rule 9.74 issue.

Following the trial court's denial of his request for collateral relief, Pollini appealed. The Kentucky Court of Appeals interpreted Pollini's argument regarding the failure to raise the Rule 9.74 violation as an error by "both his trial and appellate counsel." *Pollini v. Commonwealth*, No. 2009-CA-000964-MR, 2010 LEXIS 128, at \*15 (Ky. Ct. App. July 16, 2010). As to Pollini's trial counsel, the appeals court found nothing that constituted deficient performance. *Id.*

at \*15–16.  And as to Pollini's appellate counsel, the appeals court explained that Kentucky law did not recognize ineffective assistance of appellate counsel claims in cases where an appeal was decided following a merits review.  *Id.* at \*15.  Rather, Kentucky law recognized claims for ineffective appellate counsel in just two instances: (1) if a defendant's appeal was dismissed because of ineffective assistance of counsel; or (2) if a defendant's conviction was not appealed due to counsel's neglect.  *Boykin v. Webb*, 541 F.3d 638, 647–48 (6th Cir. 2008) (citing *Hicks v. Commonwealth*, 825 S.W.2d 280, 281 (Ky. 1992)).  Accordingly, the Kentucky Court of Appeals held that Pollini's ineffective assistance of appellate counsel claim was not a "cognizable issue in this jurisdiction."  *Pollini*, 2010 LEXIS 128, at \*15 (quoting *Lewis v. Commonwealth*, 42 S.W.3d 605, 614 (Ky. 2001)).

Proceeding pro se, Pollini sought discretionary review in the Kentucky Supreme Court.  Around the same time, the Kentucky Supreme Court, in *Hollon v. Commonwealth*, overruled *Hicks* and "recognize[d] [ineffective assistance of appellate counsel] claims premised upon appellate counsel's alleged failure to raise a particular issue on direct appeal."  334 S.W.3d 431, 436 (Ky. 2010) (overruling *Hicks*, 825 S.W.2d at 281).  In light of this change in law, the Kentucky Supreme Court remanded Pollini's case for consideration as to whether Pollini's direct appeal counsel was ineffective when he failed to raise the alleged ex parte contact between the judge and jury.  *See Pollini v. Commonwealth*, No. 2009-CA-000964-MR, 2011 LEXIS 246, at \*1, \*8 (Ky. Ct. App. Dec. 22, 2011).  On remand, the Kentucky Court of Appeals determined that appellate counsel's failure to raise the Rule 9.74 violation constituted deficient performance that was "egregious," and thus amounted to ineffective assistance of appellate counsel.  *Id.* at \*14–15.  In reaching that conclusion, the appeals court noted its earlier observation in Plank's companion appeal that the ex parte communication was "very bothersome."  *Id.* at \*14; *see also Plank*, 2005 Ky. App. LEXIS 777, at \*25.  On this basis, the appeals court vacated Pollini's conviction.  *Pollini*, 2011 LEXIS 246, at \*15.

But Pollini's relief was fleeting.  The Commonwealth appealed to the Kentucky Supreme Court, which in turn reinstated Pollini's conviction.  *Commonwealth v. Pollini*, 437 S.W.3d 144, 153 (Ky. 2014).  After acknowledging the Rule 9.74 violation, the Kentucky Supreme Court assessed what standard of review should apply to that violation.  At the time of Pollini's

conviction and direct appeal, Kentucky arguably applied a strict structural error standard to Rule 9.74 violations. *See, e.g.*, *Mills v. Commonwealth*, 44 S.W.3d 366, 372 (Ky. 2001) (citing and quoting *Lett v. Commonwealth*, 144 S.W.2d 505 (Ky. 1940), for the apparent proposition that prejudice is not required for reversal under Rule 9.74). *But see Johnson v. Commonwealth*, 12 S.W.3d 258, 266 (Ky. 1999) ("Long ago, we joined the trend away from a strict or technical application of the rules forbidding conversations with or among jurors." (citing *Cosby v. Commonwealth*, 451 S.W.2d 653, 654 (Ky. 1970))). But while Pollini's case was pending on collateral review, the Kentucky Supreme Court adopted a "fundamental fairness" standard of review for Rule 9.74 violations, effectively a harmless error standard, which made it more difficult for appellants to prevail. *See McAtee v. Commonwealth*, 413 S.W.3d 608, 626 (Ky. 2013) ("[W]e review for harmless error, which, in the context of ex parte communications between judge and jury, we define as contact that does not impugn the fundamental fairness of an otherwise constitutionally acceptable trial." (cleaned up)). And notwithstanding the more defendant-friendly standard in effect at the time of Pollini's direct appeal, the Kentucky Supreme Court concluded it was free to apply the new harmless error standard to Pollini's case because the standard of review for a Rule 9.74 violation was an issue of procedure (rather than substance) under Kentucky law. *Pollini*, 437 S.W.3d at 151. Applying this new standard, the Kentucky Supreme Court found that the trial court's Rule 9.74 violation was not significant enough to "impugn the fundamental fairness of an otherwise constitutionally acceptable trial," rendering the error harmless. *Id.* at 151–52 (citation omitted). Pollini's conviction was therefore reinstated. *Id.* at 153.

One background matter deserves further emphasis. As already noted, Pollini, throughout his state court collateral attack, failed to raise an argument that he presses today: appellate counsel's alleged ineffective assistance in failing to seek a new trial in response to the jury's erroneous conclusion that Pollini was still in the process of committing a burglary when he shot and killed Pruitt. Unlike Pollini's Rule 9.74 ineffective assistance of counsel claim, which the Kentucky courts interpreted broadly to apply to both his trial and appellate counsel, his ineffective assistance claim regarding the failure to seek a new trial involved solely Pollini's appellate counsel. And a claim of that ilk did not exist under Kentucky law at the time Pollini filed his state collateral attack. Ordinarily, the same would have been true for Pollini's Rule 9.74

ineffective assistance of appellate counsel claim. But since the Kentucky courts deemed Pollini to have raised that claim at the time *Hollon* was announced, the claim was addressed and resolved by the Kentucky courts on collateral review.

## II.

Two of Pollini's habeas challenges are before us today. First, Pollini argues that the Kentucky Supreme Court unreasonably applied the ineffective assistance of counsel standards articulated in *Strickland* when it utilized the harmless (rather than structural) error standard in reviewing the Rule 9.74 violation. Second, Pollini claims that the remedy for his successful challenge on appeal to the jury verdict should have been a new trial, not merely resentencing, and that his appellate counsel was thus ineffective for failing to request a new trial. On the first claim, the district court rejected Pollini's claim on the merits. *Pollini*, 2019 U.S. Dist. LEXIS 7459, at *10, 12. As to the second, the district court concluded that the claim was procedurally defaulted because Pollini did not raise it in his state court collateral attack. *Id.* at *13–14.

The Antiterrorism and Effective Death Penalty Act (AEDPA) guides our review. Under AEDPA, we may award Pollini habeas relief only if (1) the Kentucky court's decision was contrary to, or an unreasonable application of, federal law, or (2) the Kentucky court's decision was "based on an unreasonable determination of the facts." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1), (d)(2)). In this context, "federal law" means law as "determined by the Supreme Court of the United States." *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (quoting 28 U.S.C. § 2254(d)). And because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal," *Harrington*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)), AEDPA requires that we defer to the Kentucky Supreme Court's application of federal law if "'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**A. Pollini Fails To Show That The Kentucky Supreme Court's Treatment Of His Rule 9.74 Claim Ran Afoul Of AEDPA.**

With this high bar in mind, we turn to Pollini's claim regarding his appellate counsel's alleged ineffective assistance in failing to seek relief for the trial court's Rule 9.74 violation. *Strickland* provides the relevant federal law by which we measure the state court decision at issue. For Pollini to succeed, then, the Kentucky Supreme Court's resolution of the Rule 9.74 claim must have been (1) contrary to—or an unreasonable application of—*Strickland*, or (2) based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1), (d)(2). And to prevail on a *Strickland*-based ineffective assistance of appellate counsel claim, Pollini must satisfy two prongs: (1) that his appellate counsel was deficient, and (2) that the deficiency prejudiced him. *Hill v. Mitchell*, 842 F.3d 910, 939, 945–46 (6th Cir. 2016) (citing *Strickland*, 466 U.S. at 687 and *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

**1. The Kentucky Supreme Court Did Not Unreasonably Apply *Strickland*'s Second Prong**

At issue here is *Strickland*'s second prong—whether Pollini was prejudiced by his appellate counsel's failure to raise the trial court's Rule 9.74 violation. Generally speaking, Pollini can demonstrate prejudice by showing that he would have prevailed on appeal had his appellate counsel properly raised the issue. Whether Pollini would have prevailed turns on what standard of review the Kentucky Supreme Court was required to apply to a Rule 9.74 violation: a "structural error" or "fundamental fairness" standard. On that issue, the legal landscape shifted during the course of Pollini's appeal. At the time of his direct appeal, Rule 9.74 violations were subject to a structural error standard, meaning Pollini likely would have prevailed had his counsel raised the issue. But by the time of his collateral attack, Rule 9.74 violations were reviewed under a fundamental fairness standard, one more favorable to the Commonwealth. The Kentucky Supreme Court held that the latter standard applied in Pollini's case. As a result, Pollini could not show prejudice from his appellate counsel's error.

In assessing Pollini's challenge, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether [] counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at

101. Out of respect for AEDPA's deference requirement, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 101–02. In other words, even if we believe the Kentucky Supreme Court applied *Strickland* incorrectly, that alone is insufficient to grant Pollini relief, for "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Measured against the controlling case law backdrop, the Kentucky Supreme Court's decision to apply the fundamental fairness standard was not "contrary to clearly established Federal law." *Abby*, 742 F.3d at 225–26 (alterations omitted) (quoting 28 U.S.C. § 2254(d)). Under AEDPA, only holdings of the Supreme Court constitute clearly established federal law. *Williams*, 529 U.S. at 412. And Pollini does not point to (nor can we identify) any Supreme Court holding directly prohibiting the Kentucky Supreme Court from applying the current standard of review to his case.

Indeed, Supreme Court authority leans against Pollini's argument. Instructive here is *Lockhart v. Fretwell*, 506 U.S. 364 (1993). In *Lockhart*, the Supreme Court reviewed the Eighth Circuit's decision granting a petitioner habeas relief on the ground of ineffective assistance of appellate counsel. In reaching that conclusion, the Eighth Circuit applied the law in effect at the time of the petitioner's appeal rather than the law in effect at the time of the petitioner's collateral attack. Doing so, the Supreme Court explained, was error. In the *Strickland* context, "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart*, 506 U.S. at 369–70 (citation omitted). *Lockhart* clarified that *Strickland* is not solely outcome-based, but also incorporates fairness notions. *Strickland*'s prejudice inquiry "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372 (citations omitted). A petitioner, in other words, should not benefit from an invalid legal rule in effect at the time of his trial or sentencing.

In many respects, today's outcome follows from *Lockhart*. Pollini's argument is essentially this: he would have received relief had the Kentucky Supreme Court applied the law at the time of his direct appeal, not at the time of his collateral attack. That is the same scenario addressed in *Lockhart*. And to prevent "windfall[s]" to defendants, *Lockhart* applied the law in effect at the time of the collateral attack. *Id.* at 370.

To be sure, *Lockhart*'s footprint is limited. In its aftermath, the Supreme Court clarified that the basic *Strickland* inquiry remains unchanged. *See Lafler v. Cooper*, 566 U.S. 156, 166 (2012) ("The Court has rejected the argument that [*Lockhart*] modified *Strickland* before and does so again now."). *Lockhart*'s reach thus seems to be contained to scenarios where a petitioner's relief could be categorized as unjust because of the abolition of a legal right. *See id.* at 167 (observing that *Lockhart* demonstrates that "there are also situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice,' because defendants would receive a windfall as a result of the application of an incorrect legal principle or a defense strategy outside the law." (quoting *Williams*, 529 U.S. at 391)). But today's scenario falls well within *Lockhart*'s wheelhouse—Pollini claims entitlement to a legal standard that Kentucky no longer employs.

Our prior decisions read *Lockhart* in the same manner. Take, for example, *Abby v. Howe*, 742 F.3d 221 (6th Cir. 2014). In *Abby*, a convicted murderer had a legitimate Fifth Amendment objection that his counsel did not raise at trial. The Supreme Court later changed the law, rendering that objection obsolete. Citing *Lockhart*, we determined that no prejudice existed because "[a]ny objection by [counsel] would be 'wholly meritless *under current governing law*, even if the objection might have been considered meritorious at the time of its omission.'" *Id.* at 228 (emphasis added) (quoting *Lockhart*, 506 U.S. at 374 (O'Connor, J., concurring)). To the same effect is *Evans v. Hudson*, 575 F.3d 560, 566 (6th Cir. 2009). Again relying on *Lockhart*, we held in *Evans* that a petitioner could not "show the necessary prejudice for his claim of ineffective assistance of appellate counsel based on the failure to raise a *now-meritless* claim," even if "the [petitioner]'s claim may have had merit at the time of [petitioner's] appeal." *Id.* (emphasis added). As these cases confirm, when measured against the backdrop of *Lockhart*, the Kentucky Supreme Court's application of the harmless error standard was not unreasonable.

Pollini disagrees. Emphasizing *Strickland*'s command that, to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, Pollini contends that we must "decide whether there is a reasonable probability that the claim would have prevailed *at the time* counsel failed to raise it." *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (emphasis added). But that conclusion is in tension with *Lockhart*. To be sure, one Justice in *Lockhart* agreed that *Strickland* required courts to look to the law "at the time of trial or sentencing" when examining prejudice. *See Lockhart*, 506 U.S. at 381–82 (Stevens, J., dissenting) ("By defining prejudice in terms of the effect of counsel's errors on the outcome of the proceedings, . . . the *Strickland* Court establishes its point of reference firmly at the time of trial or sentencing."). But the majority found this dissenting point unpersuasive.

True, in some instances we have applied the law in existence at the time of the alleged ineffective assistance of counsel to assess whether *Strickland*'s prejudice prong was satisfied. *See, e.g.*, *Carter v. Timmerman-Cooper*, 380 F. App'x 470, 474 (6th Cir. 2010) (finding no ineffective assistance of appellate counsel because *at the time of petitioner's appeal*, the law did not support his resentencing argument, making it "unlikely that [petitioner] would have succeeded before the Fifth District on November 23, 2004"); *Benning v. Warden, Lebanon Corr. Inst.*, 345 F. App'x 149, 158 (6th Cir. 2009) (holding that petitioner was prejudiced by his appellate counsel's failure to make an argument that the law supported at the time of his appeal because "if counsel had briefed the *Blakely* issue, [petitioner] would have been entitled to a remand for resentencing"). Both decisions, however, are non-binding unpublished opinions. And both, it bears adding, were decided on de novo review, rather than under the deferential AEDPA standard, because the respective state courts had not assessed the merits of the petitioners' ineffective assistance of counsel claims. *Carter*, moreover, may have misconstrued the relevant legal standard. *Carter* cited to *Smith v. Murray*, in which the Supreme Court directed lower courts to assess counsel's conduct at the time of the alleged ineffectiveness. *Carter*, 380 F. App'x at 474 (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986)). But *Smith* was addressing the deficiency prong of the *Strickland* analysis, not the prejudice prong. *Smith*, 477 U.S. at 536 ("Viewed in light of Virginia law at the time, . . . [counsel's conduct] fell well within the wide range of professionally competent assistance." (cleaned up)).

Pollini notes one other difference between himself and the petitioners in *Lockhart*, *Abby*, and *Evans*.  While those petitioners relied on a defunct legal right that no longer existed (and could even be characterized as having never validly existed), Pollini still maintained a valid legal claim to be privy to jury communications.  Only the standard of review for violations of that right has changed (in a way, all agree, that dramatically undercut Pollini's likelihood of success).  But it is unclear why this distinction matters.  The underlying logic of *Lockhart* was to prohibit defendants from receiving "windfalls" through the use of old law.  *Lockhart*, 506 U.S. at 370.  And here, Pollini would be receiving a benefit Kentucky law no longer provides.  The upshot is thus the same in both instances: Pollini would receive something to which he is no longer entitled.

Pollini's two out-of-circuit habeas decisions, *Shaw v. Wilson*, 721 F.3d 908 (7th Cir. 2013), and *Young v. Dretke*, 356 F.3d 616 (5th Cir. 2004), do not make us think otherwise.  Those courts, we acknowledge, applied the law in effect at the time of the trial and sentencing, not that in effect while the case was on appeal.  But those cases dealt with a change in *statutory* law.  In view of that distinction, those courts reasoned that *Lockhart* was inapplicable because the repeal or amendment of a statute does not render the prior statute invalid during the period it was in effect.  *See, e.g.*, *Shaw*, 721 F.3d at 919 ("A legislative repeal of a statute does not present the same situation as the one in which a court mistakenly recognizes a right for some period of time and then corrects itself (or is corrected by a reviewing court).").  And even setting aside this distinctive feature, these decisions do not help Pollini clear the AEDPA bar because they are not holdings of the Supreme Court.

With all of this back and forth, perhaps the best one can say is that it is not entirely clear whether the Kentucky Supreme Court's decision to retroactively apply a new legal standard to Pollini's *Strickland* claim was correct.  We have disagreed ourselves over whether to apply current law retroactively for *Strickland* claims.  *Compare Carter*, 380 F. App'x at 474 *with Abby*, 742 F.3d at 228.  Put another way, today's case arguably is one where "fairminded jurists could disagree" over which legal standard the Kentucky Supreme Court should have applied. *Harrington*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664); *see also id.* (quoting *Williams*, 529 U.S. at 410) ("[A]n unreasonable application of federal law is different from an

incorrect application of federal law." (emphasis omitted)).  In that circumstance, however, AEDPA requires that we defer to the Kentucky Supreme Court's resolution of the issue.  We thus honor that command.

## 2. The Kentucky Supreme Court's Decision Did Not Rest On An Unreasonable Factual Determination

Pollini alternatively contends that the Kentucky Supreme Court's *Strickland* determination "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "To prove that a state court's factual assessment was 'unreasonable,' a petitioner must show that 'a reasonable factfinder must' disagree with the state court's assessment."  *Woods v. Smith*, 660 F. App'x 414, 424 (6th Cir. 2016) (quoting *Rice v. Collins*, 546 U.S. 333, 341 (2006)).  Meeting this standard requires Pollini to do more than show an alternative way to view the facts.  *Franklin v. Bradshaw*, 695 F.3d 439, 447–48 (6th Cir. 2012) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010))).  Rather, he must show "that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record."  *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).

With respect to the Kentucky Supreme Court's interpretation of the facts, we start with the jury's request of the trial judge.  The jury wrote: "Does there exist a transcript of the Plank conversation w/Police?  Difficult to locate on tape, if so, can we pls request?"  Pollini argues that the trial judge prejudiced him by not asking his counsel how to proceed, as Plank's statement to police included evidence that Pollini never intended to shoot Pruitt.  In other words, Pollini wanted the jury to have access to the tape, and because the jury might not have had access to Plank's statement through the tape, he was harmed by the trial judge not discussing the matter with Pollini before telling the jury that no transcript was available.

The Kentucky Supreme Court saw things differently.  It noted that because the transcript was neither admitted into evidence nor read aloud in court, the trial judge could not have provided the jury with a copy of the transcript of Plank's statement.  *Pollini*, 437 S.W.3d at 152.  Had it wanted to take some kind of action in response to the jury's note, the trial judge had only

two options, the Kentucky Supreme Court explained: allow Pollini to enter the transcript into evidence and read it aloud in court, or bring the jury back into the courtroom to have the relevant portions of the audiotape played again for the jury. *Id.* Neither one seemingly was attractive. Because Pollini had objected to entering the transcript into evidence multiple times at trial, the Kentucky Supreme Court found that Pollini was unlikely to suddenly change course during jury deliberations. *Id.* It thus concluded there was no harm in not reading the transcript aloud to the jury, a judgment that we cannot say is unreasonable.

Nor was there harm in not replaying the audiotape in open court. As the Kentucky Supreme Court observed, the jury "was provided with an audiotape of Plank's statement, which it was allowed to listen to at will in the jury room." *Id.* Implicit in this finding is the notion that the jury had the correct tape and that the tape was working. *Pollini*, 2019 U.S. Dist. LEXIS 7459, at *11–12. That conclusion too was not an unreasonable determination of the facts. The jury noted that a portion of Plank's statement was "difficult to locate" or comprehend, a clear indication that the jury had a working version of the audiotape. *Id.* And any contention that the jury might have had the wrong tape is pure conjecture. *Id.* Because the tape was played previously in open court, the jurors would have indicated to the judge if the wrong tape was in the jury room. *Id.* We thus cannot say that "'a reasonable factfinder must' disagree with the state court's assessment." *Woods*, 660 F. App'x at 424 (quoting *Rice*, 546 U.S. at 341). Nor, for these same reasons, do we agree with Pollini that the Kentucky Supreme Court's factual determination resulted in an unreasonable application of *Strickland*.

**B. Pollini Did Not Procedurally Default His Ineffective Assistance Of Appellate Counsel Claim Regarding Counsel's Failure To Request A New Trial.**

We next turn to Pollini's claim that his appellate counsel was ineffective for seeking only a new sentence, and not a new trial, as a remedy for the jury's erroneous conclusion that Pollini was still in the process of committing burglary when he shot Pruitt. Pollini acknowledges that he did not raise the argument during the collateral state court proceedings. But, he says, that was because Kentucky did not recognize most types of ineffective assistance of appellate counsel claims at the time of his state court collateral attack, meaning the district court was wrong to find that the argument was procedurally defaulted. *Pollini*, 2019 U.S. Dist. LEXIS 7459, at *13–14.

In overruling its prior decision disallowing certain types of ineffective assistance of appellate counsel claims, the Kentucky Supreme Court in *Hollon* declared its ruling "to have prospective effect only." *Hollon*, 334 S.W.3d at 439 (overruling *Hicks*, 825 S.W.2d at 281). Because Pollini's just-discussed ineffective assistance of counsel claim involving the alleged violation of Rule 9.74 was read broadly by the Kentucky courts to include both trial and appellate counsel, and was thus already pending on appeal when *Hollon* was decided, the Kentucky Supreme Court was able to grant discretionary review to hear that claim. But because Pollini did not raise his ineffective assistance of appellate counsel argument regarding the failure to seek a new trial, he was not able to retroactively assert that claim post-*Hollon*.

A "habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (quoting *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc)). With roots in notions of federalism and comity, the procedural default doctrine is premised on the idea that state courts should have the first pass at remedying any violation of a state prisoner's federal constitutional rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991) (internal citations omitted). A state court is deprived of this opportunity, however, when a petitioner violates a state rule of procedure that prevents the state from hearing his claim. For example, in *Coleman*, the Supreme Court held that a petitioner who filed his appellate brief three days late had effectively deprived the state of a fair opportunity to pass on his claims, and thus had procedurally defaulted them, because the state had consistently and strictly applied its timing deadlines for filing such appellate briefs. *Id*. at 742–44. So long as the state procedural rule is one that is an independent and adequate ground for refusing to fully consider the petitioner's argument, the federal courts likewise will not hear the petitioner's claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Pollini, however, did not fail to comply with state procedural rules. He acknowledges that he did not argue in state court that his appellate counsel was constitutionally ineffective in failing to seek a new trial rather than solely a resentencing. But nor could he have made that

claim under Kentucky law. After all, the Kentucky Supreme Court, at the time Pollini filed for state collateral review, refused to recognize the argument. *See Harper v. Commonwealth*, 978 S.W.2d 311, 318 (Ky. 1998) ("RCr 11.42 cannot be used as a vehicle for relief from ineffective assistance of appellate counsel." (citation omitted)); *Boykin*, 541 F.3d at 647–48 (noting that "the district court was correct in addressing the merits of [petitioner]'s claim of ineffective appellate counsel even though the Kentucky Supreme Court refuses to recognize such a claim"). In view of that state law limitation, Pollini did not procedurally default his ineffective assistance of appellate counsel claim by failing to raise the claim in state court. *See Matthews v. Parker*, 651 F.3d 489, 499 (6th Cir. 2011) ("Furthermore, according to Kentucky law, Petitioner could not have raised this claim in his state post-conviction motion. . . . Petitioner's habeas petition was his first opportunity to raise his ineffective assistance of appellate counsel claim, and he did not procedurally default this claim by not previously raising it."), *rev'd on other grounds*, 567 U.S. 37 (2012).

Comity and federalism concerns do not suggest otherwise. Our "duty to protect a state's interest in its procedural rules is only applicable once we determine that the state has decided a given case on a procedural basis." *Guilmette*, 624 F.3d at 292. Here, Kentucky had not made such a procedural determination when Pollini sought collateral review. By not allowing appellants to bring certain types of ineffective assistance of counsel claims, Kentucky voluntarily forwent the opportunity to have a first pass at remedying violations of a state prisoner's federal rights. *See Coleman*, 501 U.S. at 730. Respecting those rights today thus does no disrespect to decisions of a coordinate state court.

Concluding otherwise, it bears noting, seemingly would deprive Pollini of the opportunity to vindicate his alleged injuries. *See Halvorsen v. White*, 746 F. App'x 489, 494 (6th Cir. 2018) ("Because we have previously permitted district courts to review the merits of [Kentucky ineffective assistance of appellate counsel claims] to ensure that a recognized federal right is not rendered non-cognizable, we accept [defendant's] invitation to address it here . . . .") (citation omitted)). With that consideration in mind, we held in *Matthews* and *Halvorsen* that a Kentucky prisoner does not default his ineffective assistance of appellate counsel claims when binding state precedent barred him from doing so on direct appeal. The same is true here.

Because Pollini did not procedurally default this ineffective assistance of appellate counsel claim, he may proceed on that claim on remand.

### III.

For the foregoing reasons, the judgment of the district court is affirmed in part, vacated in part, and remanded for further proceedings.