RENDERED: APRIL 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0171-MR

CHAD MERIDA                                                   APPELLANT

v.             APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE GREGORY A. LAY, JUDGE
ACTION NOS. 14-CR-00374 AND 14-CR-00384

COMMONWEALTH OF KENTUCKY                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

LAMBERT, JUDGE: Chad Merida appeals from the Laurel Circuit Court's denial of his Kentucky Rule of Criminal Procedure (RCr) 11.42 motion for postconviction relief. We affirm.

The Laurel County grand jury indicted Merida separately for robbery in the first degree for robbing a GameStop store (Case No. 14-CR-00374) and a Dollar General store (Case No. 14-CR-00384). The indictments charge Merida with having possessed a deadly weapon when accomplishing the robberies. *See*

Kentucky Revised Statute (KRS) 515.020(1)(b) (providing in relevant part that a person commits robbery in the first degree if "in the course of committing theft, he or she uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he or she . . . [i]s armed with a deadly weapon . . . ."). The statutory definition of a *deadly weapon* pertinent here is "[a]ny weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged . . . ." KRS 508.080(4)(b).

Video from the GameStop showed Merida holding what appeared to be a handgun. Merida asserts in this appeal that he was armed with an airsoft gun, which he argues is not a deadly weapon.[1] However, when Merida confessed to committing a string of robberies to an FBI agent, he (Merida) admitted he had displayed a gun to the GameStop store clerk "for show" without specifying what type of gun he displayed. As part of their investigation into a string of robberies

---

[1] The record, including the briefs in this appeal, contains interchangeable usage of the terms airsoft gun, BB gun, and pellet gun. Although there are differences between those guns, a retailer of such firearms describes them as types of airguns, which it defines as "any type of gun that relies solely on compressed air to launch the projectile." https://www.academy.com/expert-advice/pellet-vs-bb-vs-airsoft-guns (last visited Mar. 19, 2025). A BB gun, a pellet gun, and an airsoft gun may each be a deadly weapon. *Johnson v. Commonwealth*, 327 S.W.3d 501, 507 (Ky. 2010) (holding that "a jury could reasonably determine that a pellet or BB gun was a deadly weapon (i.e. a type of weapon from which a shot could cause death or serious physical injury) in light of history of serious physical injuries caused by BB or pellet guns."); *Probus v. Commonwealth*, 578 S.W.3d 339, 344 (Ky. 2019) (holding that a gun "interchangeably" referred to at trial "as a toy gun, fake gun, BB gun, toy BB gun, and airsoft gun" could have been found to be a deadly weapon) (internal quotation marks omitted).

which occurred in multiple states, authorities found a BB gun in Florida. The parties' briefs are not clear, but it appears as if that BB gun was within Merida's actual or constructive possession. Regardless, the parties do not cite to testimony directly linking that BB gun to the weapon used to rob the GameStop store.

After the trial court denied Merida's motion to suppress his confession to the FBI, a trial was held in September 2017 on the GameStop robbery charge. Redacted portions of the confession were played to the jury. Merida later testified that he had falsely told an FBI agent that he (Merida) had committed the GameStop robbery to protect the true robber, his friend Kyle Gaffney. However, Merida said he had pleaded guilty to committing other robberies in federal court which he had not actually committed. Merida also admitted his confession implicated Gaffney having been involved in other robberies. In sum, Merida admitted his testimony contradicted what he had told the FBI and federal courts in the course of resolving the federal charges against him.

In closing arguments, Merida's counsel asserted the Commonwealth had not shown the gun used to rob the GameStop was a deadly weapon, which is the key distinction here between robbery in the first degree and robbery in the second degree. *Compare* KRS 515.020 (robbery in the first degree) *with* KRS 515.030 (robbery in the second degree). In its closing, the Commonwealth stressed that the store video showed the robber holding a gun, the store clerk said the robber

held a gun, and Merida admitted he had a gun in his confession. The Commonwealth then argued there was no testimony that the pellet gun found in Florida was used to rob the GameStop. The Commonwealth Attorney then told the jury that the BB or pellet guns he bought for his sons – which a person had to be at least 18 to buy – had warning labels stating they could cause death or serious physical injury. Thus, in the Commonwealth's view, even BB or pellet guns qualify as deadly weapons.

The Commonwealth also reminded the jury that it had the responsibility to judge the credibility of the witnesses. The Commonwealth then opined that the credibility of the witnesses it had presented had been "flawless." By contrast, the Commonwealth reminded the jury that Merida had admitted that he had not told the truth to federal officials.

Merida's counsel did not object when those comments were made. Instead, after closing arguments had concluded and the jury had begun deliberating, Merida's counsel moved for a mistrial. Counsel did not mention the statements about the Commonwealth Attorney's purchase of BB guns for his children but did object to the Commonwealth opining that its witnesses were "flawless." The trial court responded that defense counsel should have made a contemporaneous objection. Merida's counsel replied that his "general practice" was to not interrupt closing arguments. The trial court held that the lack of a

timely objection meant relief was available only if the comments had caused a manifest injustice, which it did not perceive to have occurred. Accordingly, the court denied Merida's motion.

The jury found Merida guilty of robbery in the first degree and he was sentenced to 11 years' imprisonment. He then filed appeal No. 2017-CA-1753-MR.

While that appeal was pending, Merida and the Commonwealth reached a plea agreement for the Dollar General robbery. The essential elements of that agreement were that Merida would be sentenced to 11 years' imprisonment, to run concurrently with his sentence for the GameStop robbery, and he could appeal the denial of his motion to suppress. After the trial court sentenced Merida in accordance with the agreement, he filed appeal No. 2018-CA-0310-MR. Merida had two attorneys for his appeals, one of whom had also been his trial counsel.

Soon after the second appeal had been filed, we issued a show cause order in the first appeal because Merida's brief was overdue. Merida then asked to consolidate his two appeals, to file a combined brief for both appeals, and to have an extension of time to file that brief. We granted those motions. In his appeals, Merida focused on the denial of his motion to suppress. We affirmed. *Merida v. Commonwealth*, No. 2017-CA-001753-MR, 2019 WL 2713050 (Ky. App. Jun. 28, 2019) (unpublished).

In June 2022, Merida filed the RCr 11.42 motion at hand. The motion raised several ineffective assistance of counsel claims. The trial court held an evidentiary hearing on Merida's RCr 11.42 motion in March 2023, at which Merida's trial counsel was the sole witness.

Counsel testified that his understanding at the time of trial was that the type of gun used in the robbery – *i.e.*, a traditional firearm versus a BB gun – did not matter in terms of a jury being able to find Merida had possessed a deadly weapon. He added that he was able to argue to the jury that an airsoft pistol was not a deadly weapon. Counsel also said he had advised Merida against testifying. Trial counsel essentially testified that Merida's other attorney was the lead appellate counsel, and trial counsel was not sure why the only issue raised in the appeals was the denial of the motion to suppress. However, counsel denied that he and co-counsel sought to consolidate Merida's appeals because counsel had missed a briefing deadline in the first appeal. The trial court denied Merida's RCr 11.42 motion, after which Merida filed this appeal.

The familiar standards governing claims of ineffective assistance of counsel are:

> A successful petition for relief under RCr 11.42 for ineffective assistance of counsel must survive the twin prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *accord Gall v. Commonwealth*,

702 S.W.2d 37 (Ky. 1985). The "performance" prong of *Strickland* requires as follows:

> Appellant must show that counsel's performance was deficient. This is done by showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, or that counsel's representation fell below an objective standard of reasonableness.

*Parrish v. Commonwealth*, 272 S.W.3d 161, 168 (Ky. 2008) (citations and internal quotation marks omitted). The "prejudice" prong requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). "The critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Haight v. Commonwealth*, 41 S.W.3d 436, 441 (Ky. 2001) (citation omitted), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

Both *Strickland* prongs must be met before relief pursuant to RCr 11.42 may be granted. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. This is a very difficult standard to meet . . . . We review counsel's performance under *Strickland de novo*. *McGorman*, 489 S.W.3d at 736.

*Vincent v. Commonwealth*, 584 S.W.3d 762, 768-69 (Ky. App. 2019).

-7-

Because Merida pleaded guilty to the Dollar General robbery, as it pertains to that case he must show: "(1) defense counsel's performance fell outside the wide range of professionally competent assistance; and that (2) a reasonable probability exists that, but for the deficient performance of counsel, [Merida] would not have pled guilty, but would have insisted on going to trial." *Commonwealth v. Rank*, 494 S.W.3d 476, 481 (Ky. 2016).

To succeed on his claims of ineffective assistance of appellate counsel, Merida must show appellate counsel "ignored issues" which were "clearly stronger than those presented" in the appeal. *Jackson v. Commonwealth*, 567 S.W.3d 615, 619 (Ky. App. 2019) (internal quotation marks and citations omitted). To prove prejudice, Merida must show that "there is a reasonable probability that the appeal would have succeeded" if appellate counsel had raised the omitted issues. *Id.* (internal quotation marks and citation omitted).

Of course, when resolving any ineffective assistance of counsel claim, we "must indulge the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Rank*, 494 S.W.3d at 481.

Also, "[w]e have considered the parties' extensive arguments and citations to authority but will discuss only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021). Finally, Merida has

waived all claims raised in his RCr 11.42 motion which he does not argue on appeal. *Commonwealth v. Pollini*, 437 S.W.3d 144, 148 (Ky. 2014).

Merida's first main argument is that counsel was ineffective for not knowing the law regarding what may constitute a deadly weapon. Briefly, for many decades Kentucky precedent held that "any object that is intended by its user to convince the victim that it is a pistol or other deadly weapon and does . . . convince him *is* one." *Merritt v. Commonwealth*, 386 S.W.2d 727, 729 (Ky. 1965). Under that principle, we held that even a glove could be a deadly weapon. *Whalen v. Commonwealth*, 205 S.W.3d 238, 240 (Ky. App. 2006). However, in 2010, our Supreme Court overruled *Merritt*, jettisoning its holding that a victim's subjective belief was sufficient to transform a nondeadly object into a deadly weapon. *Wilburn v. Commonwealth*, 312 S.W.3d 321, 327 (Ky. 2010).

Under Merida's theory, counsel's testimony at the RCr 11.42 hearing that he did not believe the precise type of weapon used in the robbery mattered showed that counsel was unaware that *Merritt* had been overruled. Merida then argues that counsel's failure to keep abreast of the law changed the trial strategy and caused Merida to commit perjury by denying his involvement in the GameStop robbery. Merida essentially asserts that he would have told the jury he used an airsoft gun to rob the GameStop instead of falsely telling the jury he was not the GameStop robber if his counsel had known the current status of the law.

-9-

Merida has not demonstrated prejudice, even if we were to accept (solely for purposes of argument) that counsel's seeming lack of knowledge that *Merritt* had been overruled was deficient.

First, the gist of Merida's argument is that he should get relief from his own perjury. That assertion is shocking and jurisprudentially intolerable. No person has a right to commit perjury. *Nix v. Whiteside*, 475 U.S. 157, 173, 106 S. Ct. 988, 997, 89 L. Ed. 2d 123 (1986). Perjury is a serious criminal offense, not a valid avenue to try to deceive a jury or receive postconviction relief. Counsel's seeming lack of knowledge about *Merritt* did not impel Merida to lie under oath.

Second, there is no first-hand evidence that the Kentucky robberies were accomplished via an airsoft gun. Merida does not point to where he told the FBI agent or the jury that he used an airsoft gun. Merida does not point to where the GameStop store clerk testified that the robber used an airsoft gun. Merida's plea agreement for the Dollar General robbery does not state he used an airsoft gun. A BB gun, not an airsoft gun, was recovered by the authorities in Florida.

Merida faults counsel for not producing the airsoft gun Merida claims was used in the Kentucky robberies. But Merida does not specify how counsel could have produced that weapon. Merida did not testify at the RCr 11.42 hearing. Consequently, Merida's argument is based on an assertion for which he has not pointed to supporting evidence.

-10-

Third, Merida has not shown that his counsel advised him, or encouraged him, to commit perjury. Actually, counsel testified at the RCr 11.42 hearing that he had advised Merida not to testify at trial. Merida has not shown that counsel knowingly helped Merida perjure himself.

Finally, Merida is not entitled to relief even if we were to somehow leniently assume that the Kentucky robberies were accomplished with an airsoft gun. Counsel already argued in closing that the Commonwealth had not proven that the GameStop robber possessed a deadly weapon, based on the discussion at trial of BB or pellet guns. Merida has not explained how counsel's knowledge of *Merritt*'s having been overruled would have altered the outcome of the trial. Merida argues an airsoft gun cannot be a deadly weapon, but our Supreme Court has held that a weapon variously referred to as a BB gun or pellet gun or toy gun or airsoft gun could be a deadly weapon. *Probus*, 578 S.W.3d at 344.

In sum, Merida has not shown prejudice because he has not shown that counsel's deficiency caused "defeat [to be] snatched from the hands of probable victory." *Vincent*, 584 S.W.3d at 768 (internal quotation marks and citation omitted). *See also Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011) (holding that to satisfy the prejudice prong "[t]he likelihood of a different result must be substantial, not just conceivable").

-11-

We now turn to counsel's failure to object timely to statements made by the Commonwealth in its closing argument. First, Merida cites to no authority to support his insistence that the Commonwealth's closing argument was improper. Of course, Merida's counsel could only potentially be ineffective for not objecting to improper arguments, so Merida is required to cite authority showing the Commonwealth's arguments were improper. Yet Merida cites only to a case with the universal holding that prosecutors have a duty to seek convictions within the bounds of the law. A conclusory argument without a citation to supportive authority is insufficient to obtain appellate relief. *Schell*, 640 S.W.3d at 32; *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005).

Even on the merits, Merida has not shown an entitlement to relief. As to the Commonwealth having opined that the credibility of the witnesses it had presented had been "flawless," our Supreme Court has "long recognized that it is permissible for prosecutors to comment on the veracity or credibility of witnesses." *Dickerson v. Commonwealth*, 485 S.W.3d 310, 332 (Ky. 2016). That general rule specifically allows the Commonwealth to "comment on the defendant's credibility." *Brown v. Commonwealth*, 313 S.W.3d 577, 630 (Ky. 2010). Moreover, our Supreme Court held in an analogous situation that a prosecutor's statement in closing argument that the Commonwealth's witnesses "'came up here and told the truth'" could "be fairly construed . . . not as a statement of the

prosecutor's personal belief but as a comment on the veracity debate" over which witnesses had been truthful. *Id.* Merida cites to no authority which would remove the "flawless" comments from those rules. Crucially, the Commonwealth also stated that it was up to the jury to assess witness credibility. Therefore, Merida's counsel was not ineffective for failing to timely object to the "flawless" comment.

Turning to the Commonwealth Attorney's comments about the warning labels on his children's BB guns, we agree with the Commonwealth that the Commonwealth Attorney "shouldn't have made those factual statements . . . ." The purported warning labels on the BB guns of the Commonwealth Attorney's children were not introduced into evidence and were not at issue. Precedent plainly holds that attorneys in closing arguments "may draw reasonable inferences from the evidence and propound their explanations of the evidence and why the evidence supports their respective theories of the case. However, they may not argue facts that are not in evidence or reasonably inferable from the evidence." *Garrett v. Commonwealth*, 48 S.W.3d 6, 16 (Ky. 2001) (citations omitted).[2] Given the Commonwealth's concession that the remarks were improper, we conclude the lack of a timely objection satisfies the deficient performance prong.

---

[2] *But see Newcomb v. Commonwealth*, 410 S.W.3d 63, 89 (Ky. 2013) (holding that a prosecutor who described a pamphlet about rape he had seen did not require reversal of a conviction because "the prosecutor's reference to a pamphlet he read from a local police station was anecdotal, not the giving of material testimony").

However, Merida has not satisfied the prejudice prong. Not every improper stray remark by the Commonwealth entitles a defendant to relief on direct appeal, and "the standards governing relief on RCr 11.42 motions are more stringent than those governing direct appeals." *Commonwealth v. Young*, 212 S.W.3d 117, 121 (Ky. 2006). On direct appeal, a defendant may receive relief based on improper remarks by the Commonwealth only if the prosecutorial misconduct is "flagrant . . . ." *Murphy v. Commonwealth*, 509 S.W.3d 34, 54 (Ky. 2017). The four factors used to determine flagrant misconduct are "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.* (internal quotation marks and citations omitted).

The remarks here were intentional. However, they were brief. Moreover, the evidence against Merida was strong. The remarks did not mislead the jury nor prejudice Merida to the extent that precedent permits a BB gun to be deemed a deadly weapon and the purported warnings on BB guns mentioned by the Commonwealth appear to have been a clumsy attempt to highlight that principle. On the whole, Merida has not shown that the comments were sufficiently egregious to constitute prosecutorial misconduct. Therefore, Merida

has not satisfied the prejudice prong as he has not shown that a timely objection by counsel would have altered the outcome of the trial.

Merida's next argument is that trial counsel was ineffective for not objecting to the usage of the word *pistol* in the jury instructions. As given by the trial court, the instruction at issue read in pertinent part that the jury could convict Merida of first-degree robbery if it found beyond a reasonable doubt that he stole money from GameStop and threatened the immediate use of physical force upon the store clerk while being "armed with a pistol[,]" which was a deadly weapon. Another instruction essentially defined *deadly weapon* in accordance with KRS 500.090(4)(b) and *Wilburn*, 312 S.W.3d at 329.

Merida's arguments are not crystal clear. For example, he variously seems to argue that the instruction should have replaced the word *pistol* with *BB gun* or *pellet gun* or *airsoft gun*. Also, we reiterate that Merida cites nothing specific in his confession, his trial testimony, or the store clerk's testimony showing that Merida was armed with a BB gun or pellet gun or airsoft gun when he robbed the GameStop store.

Second, we also reiterate that a BB gun or a pellet gun or an airsoft gun may properly be found to be a deadly weapon. The definition of deadly weapon provided by the trial court in the instructions appropriately encompasses all of those types of weapons, and Merida's counsel urged the jury in closing

-15-

argument to conclude the Commonwealth had not shown that the GameStop was robbed by someone armed with a deadly weapon. Third, the broad definition of *pistol* would include a handgun-shaped BB or airsoft gun. *See* https://dictionary.cambridge.org/us/dictionary/english/pistol (last visited Mar. 17, 2025) (defining *pistol* as "a small gun that is held in and fired from one hand").

Next, the usage of *pistol* was more to Merida's advantage than detriment. The core of Merida's argument is that a BB gun is not a pistol. Therefore, if the jury had agreed and believed the GameStop robber did not possess a pistol, it would have had to acquit Merida of robbery in the first degree because the instruction for that offense plainly required the jury to believe that Merida robbed the GameStop while armed with a pistol. Kentucky precedent holds that no relief is appropriate if a jury instruction's error is favorable to a defendant. *Robertson v. Commonwealth*, 82 S.W.3d 832, 839 (Ky. 2002).

Next, Merida argues trial counsel was ineffective for advising him to plead guilty to the Dollar General robbery while the appeal from the GameStop robbery conviction was still pending. Merida contends his guilty plea in the Dollar General robbery somehow limited the issues he could raise in the GameStop appeal and that counsel did not tell him of that limiting effect prior to Merida agreeing to plead guilty. And Merida alleges appellate counsel (which included

-16-

the same attorney who had been trial counsel) sought to consolidate the two appeals due to having missed a briefing deadline in the GameStop appeal.

It is difficult to understand, and concisely resolve, Merida's convoluted, speculative arguments. First, Merida cites to no published authority to support his arguments. *Schell*, 640 S.W.3d at 32. Merida does cite to an unpublished opinion which holds that a movant may not raise via RCr 11.42 arguments which were, or could have been, raised on direct appeal. There is a host of published precedent reciting that familiar principle. *See, e.g.*, *Haley v. Commonwealth*, 586 S.W.3d 744, 750 (Ky. App. 2019). Accordingly, Merida's citation to an unpublished opinion was improper, an error compounded by Merida's failure to explicitly state the opinion was unpublished. *See* Kentucky Rule of Appellate Procedure (RAP) 41(A).

Merida cites to nothing besides conjecture to support his argument that counsel successfully sought to combine his two appeals due to having missed a briefing deadline in the GameStop (first) appeal. Trial counsel, who was also appellate co-counsel, denied that accusation under oath at the RCr 11.42 hearing. Merida has not cited any specific evidence to contradict that testimony. The fact that counsel sought to consolidate the appeals after the issuance of our show cause order does not, standing alone, suffice to meet Merida's burden, especially since the denial of the suppression motion was an issue common to both appeals.

In addition, Merida tellingly cites to no authority to support his insistence that consolidating the two appeals meant that the only possible argument that could have been raised was the denial of his motion to suppress. Although the suppression issue was common to both appeals, there is no binding rule absolutely preventing a party to consolidated appeals from raising an issue which does not universally pertain to each individual consolidated appeal.

Courts employ a "strong presumption that appellate counsel's choice of issues to present to the appellate court was a reasonable exercise of appellate strategy." *Pollini*, 437 S.W.3d at 149 (internal quotation marks and citations omitted). Moreover, the Supreme Court has explained that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 765, 145 L. Ed. 2d 756 (2000). Merida's trial counsel testified at the RCr 11.42 hearing that he did not recall why no issues beyond the denial of the motion to suppress were raised in Merida's consolidated appeals. Merida did not present any other witnesses. Accordingly, Merida has not overcome the strong presumption that appellate counsel made strategic choices about which issues to include and which to ignore.

Merida has also failed to show with specificity the purportedly meritorious issue(s) counsel failed to raise on appeal. Instead, Merida generically

argues that "there were many appellate issues that could have been raised from Mr. Merida's jury trial. [Trial counsel] testified that all of his objections made during the trial could have been appealed." That is insufficient. To succeed on a claim of ineffective assistance of appellate counsel, Merida must show there were "ignored issues" which were "clearly stronger than those presented" in the appeal. *Jackson*, 567 S.W.3d at 619 (internal quotation marks and citations omitted). Merida cannot receive relief because he has not stated with specificity the "ignored issues" which were "clearly stronger" than those raised in his consolidated appeals.

Finally, "[i]n the guilty plea context, to establish prejudice the challenger must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Commonwealth v. Pridham*, 394 S.W.3d 867, 876 (Ky. 2012) (internal quotation marks and citations omitted). A "conclusory allegation" that he would have rejected the plea bargain absent counsel's errors "is not enough." *Stiger v. Commonwealth*, 381 S.W.3d 230, 237 (Ky. 2012). Instead, Merida "must allege facts that, if proven, would support a conclusion that the decision to reject the plea bargain and go to trial would have been rational, *e.g.*, valid defenses, a pending suppression motion that could undermine the prosecution's case, or the realistic potential for a lower sentence." *Id.*

Here, Merida has not adequately shown he would not have pleaded guilty to the Dollar General robbery absent the alleged errors of counsel. Merida has not cited to a valid defense or realistic potential for a lower sentence he had regarding the Dollar General robbery. Indeed, his sentence for that offense was the same length as, and was ordered to be served concurrently with, his GameStop robbery conviction. In sum, Merida has not adequately demonstrated ineffective assistance of counsel stemming from his guilty plea to the Dollar General robbery, the consolidation of his appeals, or the issues raised therein.

For the foregoing reasons, the Laurel Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

David Lackford
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

James Havey
Assistant Attorney General
Frankfort, Kentucky